[Civ. No. 16607.   Second Dist., Div. Two.   Dec. 14, 1948.]

MIKE S. LANDFIELD et al., Appellants, v. CHARLES EDWARD COHEN et al., Respondents.

Harold D. Geffen for Appellants.

Marvin Wellins for Respondents.

MOORE, P. J.—Having been denied recovery of $4,000 theretofore paid as part of $156,000—the purchase price of certain real property—appellants demand reversal of the judgment on the grounds that (1) respondents did not plead and prove a forfeiture of the partial payment or damages resulting from appellants' failure to perform their agreement of purchase, (2) appellants were not in default by reason of their failure to deposit the balance of $152,000 in escrow on or before the date specified in the agreement for such deposit.

On May 16, 1946, respondents contracted to sell a parcel of urban property to appellants. The agreement was memorialized by escrow instructions to a title company, in which it was recited that "$4,000 has been paid outside of escrow." It was also stipulated that respondents would deliver a deed of the property to the escrow agent on or before June 29, 1946; that "this escrow is contingent upon the grantor acquiring the title to the property involved . . . Time is of the essence of these instructions. If this escrow is not in condition to close by July 1, 1946, any party who then shall have fully complied with his instructions may, in writing, demand the return of his money and/or property; but if none have complied, no demand for return thereof shall be recognized until five days after the escrow holder shall have mailed copies of such demand to all other parties . . . If no such demand is made, close this escrow as soon as possible."

While appellants did not deposit the $152,000 in the escrow on June 29, 1946, respondents did deposit their grant deed with the escrow holder. On July 8, 1946, appellants attempted to cancel the escrow instructions, refused to pay the $152,000 and demanded a return of the $4,000 for the alleged reasons that respondents had not furnished the escrow holder with $42,000 with which to discharge an existing encumbrance on the property. Prior to the date of escrow respondents had by competitive bid purchased the property from the trustees in bankruptcy of a bankrupt corporation for the sum of $152,000. Appellant Mike Landfield was present in court at the purchase and knew the terms thereof. Those terms required (1) respondents to consummate the transaction with the bankrupt's trustees by means of an escrow with the same title company chosen by appellants to hold their escrow with

respondents, and (2) the trustees to sell subject to an existing, valid trust deed securing payment of $42,000. Thereupon, both escrows were opened simultaneously and the same escrow officer conducted them. Both were to have been closed simultaneously on July 1, 1946.

Pursuant to an established custom in the city of Los Angeles the title company intended and planned to use the money to be paid by appellants on or before June 29, 1946, to pay off the trust deed of record and to close both escrows as agreed by recording the reconveyance, the deed from the trustees in bankruptcy to respondents, and the latters' grant deed to appellants.

On July 3, 1946, the escrow agent received the reconveyance from the beneficiary of the existing trust deed. July 8, appellants demanded return of the $4,000 and on August 12, they deposited the $152,000 in the escrow. However, at the time of such deposit, respondents had cancelled the escrow and withdrawn their grant deed therefrom in reliance upon appellants' acts of July 8. The court found that respondents "have not suffered any damage in excess of the sum of $4,000."

█ In the absence of allegation and proof of fraud on the part of the vendor in the execution of a contract for the sale of land it will be presumed that the writing was understood by the vendee. █ If the latter pays a portion of the purchase price at the time of his agreement to buy and thereafter defaults in the performance of his promises, he cannot recover the moneys paid. The act of a buyer in paying his money to his vendor on a contract which the former intends to execute, and to the performance of which he has pledged his faith and made a payment as evidence thereof—such act transfers the money so paid as finally as if the buyer had at the time made full payment and received full consideration. It is as complete a transfer of the money paid as if he had made a gift thereof. █ In the instant action the entire situation was understood by appellants as well as by respondents. Sale of the parcel to the latter by the trustees in bankruptcy had been confirmed by the federal court in the presence of appellants who thereby knew that the discharge of the existing trust deed was to be accomplished by the use of their purchase money. The twin escrows were proceeding according to custom, and transfer of title would have been duly made to appellants had they remained faithful to the terms of their contract. Having chosen to upset the very design they had helped to create they are in no position to deprive

their vendors of the advantages the latter had gained by their bargain.

■ The vendee of real property after his own default under his contract of purchase without equitable excuse therefor cannot maintain an action to recover moneys he has paid on the purchase price. (*Cockrill* v. *Boas,* 213 Cal. 490, 492 [2 P.2d 774].) The vendor's right to retain moneys paid on a purchase contract arises out of the very nature of the agreement of free moral agents and exists whether or not the contract provides for forfeiture or liquidated damages; and where the parties have made time of the essence, not even a court of equity can relieve a vendee of his default in the absence of fraud, mistake or undue influence. (*Glock* v. *Howard & Wilson Colony Co.,* 123 Cal. 1, 13 [55 P. 713, 69 Am.St.Rep. 17, 43 L.R.A. 199]; *Wilson* v. *Security First National Bank,* 84 Cal.App.2d 427, 432 [190 P.2d 975].) The Glock decision (p. 11) held concisely that in the absence of showing an equitable cause for rescission of a vendor's agreement to sell, the latter has the right both in equity and in law to retain the moneys paid by the defaulting vendee. Business transactions are not to be transmuted into amusement devices by the aid of judicial decrees. They are hedged about by legal rules and equitable principles, but unless those rules and principles are transgressed the law authorizes no interference by courts with the acts of the participants. To do so would constitute an interference with the freedom of contract, the boast of our economy, our culture, and our jurisprudence.

The second basis assigned for reversal is answered by the foregoing factual recitals and legal principles. When June 29 had passed without their having deposited the $152,000 with the escrow agent appellants were in default. Respondents having delivered their deed, the title company was at all times prior to appellants' repudiation of their agreement to purchase in possession of every document essential to the passing of a clear title except the reconveyance, arrangements for which had been perfected. By reason of such default appellants are not entitled to recover the $4,000.

Judgment affirmed.

McComb, J., and Wilson, J., concurred.

A petition for a rehearing was denied December 29, 1948, and appellants' petition for a hearing by the Supreme Court was denied February 10, 1949. Carter, J., voted for a hearing.