[Civ. No. 17458. Second Dist., Div. One. May 9, 1950.]

J. N. BRICE et al., Respondents, v. BRADLEY D. EVANS et al., Appellants.

Arthur Speight and Samuel Marks for Appellants.

Loren Miller and Harold J. Sinclair for Respondents.

DORAN, J.—On June 20, 1945, the parties hereto executed a written "Lease Form with Agreement for Sale of Real Estate," under which the respondents Brice leased to appellants Evans certain premises for a period of 20 months, at a monthly rental of $42.50 with an option to buy at a price of $5,075. The sum of $500 was received from defendants as a deposit "to insure the fulfilling of this lease." It was "agreed that time is of the essence of this agreement."

The specified payments of $42.50, according to appellants' brief, "were never made on the 1st day of each month as provided by Exhibit I (the lease). . . . Brice accepted the first payment on July 9, 1945 although . . . it was due June 1, 1945. According to Mr. Brice's testimony all payments were made about one month behind." The final payment should have been made on January 1, 1947, and although it was not made on that date, respondent J. N. Brice told appellants: "I wished at that time to deed the property to them even though they were one payment in arrear," and "They readily agreed to it."

Thereafter, on March 15, 1947, a new agreement of sale was signed by J. N. Brice and Mr. and Mrs. Evans, specifying a price of $5,500, of which $1,202.81 is acknowledged as having been paid, "balance payable as follows: Refinance original FHA mortgage with Bank of America for amount to cover balance." The balance is "to be deposited in escrow within 60 days . . . and failing to make such payments, above amount paid is retained by and forfeited to Seller as liquidated damages. . . . Agent reserves the right to refund payment if

unsatisfactory to owner.'' Mrs. Brice did not sign this agreement; J. N. Brice signed as both agent and owner.

Concerning the discrepancy between the price specified in the original and substituted agreements, J. N. Brice testified: ''At that time prices on property had advanced and to get the loan applied for I showed Mr. Evans that he—I told Mr. Evans that he would have to change the price which he was paying for the property. That is, a property selling under value is appraised at the selling price and not the regular appraisal value. . . . Well, Mr. Evans said he would like for me to help him any way that I could help him. So then I showed him that by setting a price at $5,550.00 we could get an eighty per cent loan on that evaluation which he readily agreed to, which would give us the amount needed to pay it off. Then we entered into this agreement at $5,550.00.''

About March 30, 1947, according to Brice's testimony, ''I explained to him (Evans) that the bank had informed me of a committment from the F. H. A. . . . It seems to me it was $4500.00, providing Mr. Evans would pay off some indebtedness that he owed on some title, one loan that he had secured. These covered erecting of a garage, putting in a water softener . . . There was an amount of over $700.00 due under that F. H. A., Title I. And I explained to him . . . that they would not accept it until those bills were paid off. . . . He were unable to pay them off at the time and also stated that if I would give him until June the 1st, he would be able to clear those bills off.''

Shortly after June 24, 1947, Evans came to Brice's office ''with his hands up in the air. He says, 'I got my hands up, but I don't want you to take advantage of me. It's impossible for me to go any farther.' He said, 'I don't want to lose everything I have in the property. How much will you give me back out of it and I just give up.' ''

It appears that after the substituted agreement was entered into, appellants made no payments on the rent which was to be paid pending the refinancing, until May 26, 1947, when Mrs. Evans paid $60. Mr. Brice pointed out that this was inadequate and Mrs. Evans ''said her husband said he would bring some more Saturday . . . and I told her that I would not credit it on the rental but I would take it as a deposit; that she would bring in the balance of the rental on Saturday.'' Evans did not bring in the money on Saturday and did not appear until in June. Brice testified: ''I told him I would give him the time until June the 15th.'' No further payment

was ever made although Evans remained in possession of the property until the time of trial, February 21, 1949. The proposed escrow was never opened, appellants being unable to comply with the F.H.A. demands for discharge of the $700 indebtedness.

The complaint herein was in the conventional form seeking to quiet title in the seller. The answer of Mr. and Mrs. Evans set up the lease and purchase agreement of June 20, 1945, alleged an exercise of the option to buy, and that ''plaintiffs have refused and still refuse to abide by the terms of said agreement, and have refused to sign the necessary escrow instructions to complete the purchase of said property.''

At the trial the only testimony offered was that of the plaintiff J. N. Brice; there was no cross-examination of such witness. Appellant's attorney then stated: ''There is no question but that Mr. Brice's legal title to the property is good and we will make no issue of that. We have set up a defense and demand that he should go through with the agreement. . . . I don't think this court could possibly do anything except to say that Mr. Brice's legal title is good and that would leave us right exactly where we were. There's not a suit to foreclose the interest of Mr. and Mrs. Evans here in the property. Consequently I make a motion for a non-suit or ask that the Court hold that the legal title of Mr. Evans is good and stop right there.''

Plaintiffs (respondents) then sought permission to amend the complaint, which permission was denied unless defendants consented thereto. Defendants objected to the making of any amendment, and sought to have the court order plaintiffs to accept a compromise and to continue with the contract; this the trial court also refused to do. Thereafter the court took the matter under submission, made findings that the parties had substituted a new purchase agreement for the original contract; that the defendants had failed to comply with the substituted agreement and hence ''have no interest whatever in or to said land and premises.'' Judgment was entered accordingly. Appellants thereafter moved to vacate the judgment, to reopen the case, and for a new trial, which motions were denied.

According to appellants' brief, ''The case presents the following questions: First, what was the legal effect of plaintiffs' receiving payments always late? Second, what was the legal effect of the second agreement? Third, can equity declare

a forfeiture? Fourth, considering the theory upon which the action was tried, did the statements of the court lead defendants into error in resting their case without putting on a defense? Fifth, considering the manner and theory upon which the case was tried, did the court err in denying the motion of defendants to vacate the Minute Order of Judgment, to Reopen Trial of Case, and to Determine the Action on the Merits, and also in denying defendants' Motion for a New Trial?''

Respondents answer the above contentions by noting that both parties feared that, under the complaint to quiet title, ''the Court might simply find that the Respondent's legal title was good and leave to future litigation the matter of the rights of the parties under the lease-agreement. Fearing that, he (respondent) sought in vain to amend or offer proof and then amend to conform with proof. . . . As the colloquy between Court and both Counsel developed however Counsel for Respondent pointed out that (under Mr. Brice's testimony) the Court might find that the second agreement was a new one,'' which was the view ultimately taken by the trial court in rendering judgment.

''Appellants counsel,'' avers respondents' brief, ''made a calculation as to his position and came to the conclusion that on the state of the record the Court could do nothing except find title in the Respondent and leave to some future time the question of Appellants' rights under the lease agreement. Acting on that belief he resisted any amendment.'' When the trial court adopted the respondents' view that the March 15th agreement was a new and substituted agreement with which appellants had not complied, ''to Appellants' surprise and discomfiture,'' appellants' counsel ''then changed positions and wanted to reopen the case to present the very issues to which he had objected so vigorously.'' Appellants' counsel, continues respondents' brief, ''complains of the end the Court reached because he had believed that the Court would take another view.''

As has been so often said, in respect to sufficiency of evidence the power of the appellate court begins and ends with the inquiry whether there is substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trial court. The trial court's conclusion in the instant case that a new and substituted agreement had been entered into and that appellants were in default thereunder

is certainly supported by the only testimony in the record,—that of J. N. Brice.

The record does not indicate or suggest that the trial court or anyone else "led defendants into error in resting their case without putting on a defense." Appellants' counsel as well as respondents' attorneys, were in a position to view the record as it then stood, and to take whatever steps might be deemed expedient. Examination of the record shows that counsel for each party acted vigorously and zealously in attempting to preserve the client's rights at every point of the trial. It is evident, as respondents' brief has pointed out, that appellants' counsel believed there was no necessity to offer evidence and that under the pleadings the court's conclusion would be favorable to appellants' interest. That such strategy proved erroneous and that the court adopted respondents' rather than appellants' theory presents no point for reversal. Rather, such situation merely involves one of the perils of navigation incident to all litigation.

The record fails to disclose any reversible error. The parties to the original agreement were entitled to substitute a new and different agreement if they chose to do so. As set forth in respondents' brief, "Respondent's change of position in forbearing to assert his right to claim default under the lease-agreement and his agreement to extend time for Appellants to make a loan sufficient for them to complete purchase of the property" affords adequate consideration for the new agreement.

In reference to retention by the seller of the amounts paid by appellants, the following quotation from *Landfield* v. *Cohen*, 89 Cal.App.2d 177, 180 [200 P.2d 149], is applicable: "The vendee of real property after his own default under the contract of purchase without equitable excuse therefor cannot maintain an action to recover moneys he has paid on the purchase price. (*Cockrill* v. *Boas*, 213 Cal. 490, 492 [2 P.2d 774].) The vendor's right to retain moneys paid on a purchase contract arises out of the very nature of the agreement of free moral agents and exists whether or not the contract provides for forfeiture or liquidated damages; and where the parties have made time of the essence, not even a court of equity can relieve a vendee of his default in the absence of fraud, mistake or undue influence." Incidentally, it will be remembered that appellants enjoyed occupancy of the premises without

any payment whatsoever, from May 26, 1947, when Mrs. Evans paid the $60 hereinbefore referred to, until the date of·trial, February 21, 1949.

No reversible error has been shown in the trial court's denial of appellants' motions to vacate the judgment and reopen the trial, or in the refusal to grant a new trial. Appellants' assertion that ''While it does not appear in the record, it was actually at the suggestion of the judge of the trial court that the Motion to Vacate the Minute Order of Judgment to Reopen the case was made,'' adds nothing to the weight of the present contentions. The same may be said in respect to appellants' observation that ''The spirit and trend of modern decisions . . . is that causes should be permitted to be heard on their merits.''

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

The opinion was modified and a petition for a rehearing was denied May 31, 1950.