[Civ. No. 21028.   Second Dist., Div. One.   Nov. 23, 1955.]

Estate of ALOYSIUS JOSEPH UNIACK, Deceased.   CENTRAL REALTY COMPANY (a Partnership) et al., Appellants, v. UNION BANK AND TRUST COMPANY et al., as Executors, etc., Respondents.

Irwin M. Fulop and George I. Devor for Appellants.

Pearlson & Pearlson, Herbert D. Pearlson, Albert Pearlson, Latham & Watkins and A. R. Kimbrough for Respondents.

DORAN, J.—This is an appeal by real estate brokers from that portion of an "Order Confirming Sale of Real Property" fixing brokers' commissions on a sale price of $780,000. The total commission allowed was $10,000, of which appellant's share was $5,000.

"Appellants contend that the Court failed to perform its judicial function to determine 'a reasonable compensation' as required by Probate Code, Section 761.5, and that Finding of Fact XIII (Clk. Tr. p. 23 that the brokers are estopped to demand a commission beyond that announced and fixed by the Court) is not supported by the evidence."

Section 761.5 of the Probate Code provides that, "Where an original bid is made by a purchaser direct to the estate and thereafter at the time of hearing the return of sale containing the original bid, an increased bid is made by a bona

fide agent which results in the confirmation and sale of the property at such increased bid, the court shall allow a commission to the agent who procured the increased bid, which commission shall be fixed by the court at such amount as the court, in its discretion, finds will be a reasonable compensation for the services of the agent to the estate.''

As summarized in appellants' and respondents' brief, one of the executors in the Uniack estate wrote to appellants describing ''the Geraldine Tract,'' involved herein, listing it for sale and requesting bids, ''Subject to the foregoing conditions and to the requirement that the purchaser shall deposit approximately 10 per cent of the purchase price with the offer to purchase, commission will be paid at the regular and current Los Angeles Realty Board rate only to real estate broker submitting written offer accepted by us.'' The current commission rate is 5 per cent.

''Appellants, licensed real estate brokers with thirty years experience, thereupon endeavored to interest one L. K. Shapiro in the property. Shapiro apparently was acting for the Western Harness Racing Association. From June 4 to September 23, 1954, . . . most of Mr. Rosenthal's (one of two partners in Central Realty Co.) time was devoted to the Geraldine Tract and adjacent properties. . . . Mr. Rosenthal did not submit a written bid during this period but he was looking to executor for his commission.''

About September 13, 1954, Mr. Rosenthal telephoned the executor and was advised that an acceptable bid had been received from one Teague. On September 23, 1954, the executors notified Rosenthal that the return of sale on the Teague bid would be heard in court on October 7, 1954. During this period Rosenthal advised the executors ''that he would produce a buyer in court,'' and was informed that such purchaser should be equipped with cashier's check and a letter of credit. The Teague bid was $430,000, with a commission of $10,750 claimed, and it is appellant's claim that this reduced commission arrangement ''was unknown to him until the commencement of the hearing.''

At the hearing, 17 bids were made by various parties, ''all with commission claimed, including bids by L. K. Shapiro, who designated appellants as the broker. The last bid in this series, which included none by Mr. Teague, was $496,000.00 by Mr. Shapiro.'' Mr. Teague then announced, ''I was the original bidder. I will raise mine to $500,000 and on this bid and subsequent bids there will be a $10,000.00 commission

claimed only." Thereafter there was spirited bidding by various persons without mention of commission. Mr. Teague's last bid was $650,000, and a sale of the property to Mr. Shapiro, appellant's bidder, was by the court, "confirmed for $780,000, $10,000 commission."

It is stated in appellant's brief that "Mr. Shapiro assumed, as a minimum, that the $10,000.00 would be wholly allocated to appellants. Not a word of testimony was taken on the services of the brokers nor on the reasonableness of the compensation to them." Two weeks later, appellant's brief continues, a further hearing was held on this claim, but "The Court refused to determine any other amount, on the ground that appellants had waived and relinquished any right to further commission and were estopped to assert any claim," by reason, as stated in the trial court's conclusions of law, "of their silence and failure to speak or act or object to the statements made by the Court at the time of the hearing of sale," when the commission of $10,000 was confirmed. Appellants "assail such finding and assert that it has no support in the evidence."

The appellants' contention that the procedure adopted by the trial court in fixing the broker's commission was improper, cannot be sustained. A survey of the record indicates that appellants were present at the hearing of the return of sale, and "appellants make no claim that he (Mr. Rosenthal) did not hear the statements made by the parties and the Court at the hearing of October 7, 1954. He did hear those statements. It is also clear that he made no statement in open court, and he did not speak to his 'client' Mr. Shapiro during the bidding." Appellants' attempt to explain this silence by stating that "Mr. Rosenthal believed he required an attorney to participate in the proceedings," is not convincing.

The trial court announced that it would be assumed that all further bids were subject to a $10,000 commission. This statement, as said by the respondent, "specifically invited an answer or denial," and must have been so understood by every person in the courtroom, whether lawyer or layman. If appellants were not satisfied with the arrangement mentioned by the court, this was the time to make known any objection thereto. Cases cited by appellants furnish no support for the contentions here made.

Appellants seem to contend that by reason of previous negotiations between the executors and brokers, some sort of fiduciary relation resulted or that there was some under-

standing that the brokers would be compensated in accordance with prevailing rates, or at least in a "reasonable" amount; that the trial court inequitably "froze" the amount of commission without hearing, thereby defeating appellants' rightful claim. In this connection it may be noted that appellants' client had entered no bid whatever prior to the court hearing and was in no different situation than any other prospective bidder. At the hearing all bidders were given the same opportunities and were bound by the same rules.

The fixing of "a reasonable compensation" to the agent who has produced an increased bid is, by the express terms of section 761.5 of the Probate Code, a matter within the discretion of the trial court. In the instant case, the amount of $10,000 was fixed by the court as such a reasonable amount, apparently with the full acquiescence of the various bidders present. No abuse of this discretionary power has been shown.

None of the cases cited by appellant support the claim that the trial court was required to hold a special hearing to determine "(a) What services the broker has rendered, and (b) What those services are reasonably worth." As pointed out in respondents' brief, the cases cited deal with factual situations dissimilar to that here involved. And, as hereinbefore noted, the trial court actually accorded to appellants a second hearing on October 20, 1954, at which Mr. Rosenthal was examined and cross-examined, after which the court declined to change the previous ruling as to the commission.

The findings are supported by the record and the latter discloses no reversible error.

The order is affirmed.

White, P. J., and Nourse (Paul), J. pro tem.,* concurred.

A petition for a rehearing was denied December 12, 1955, and appellants' petition for a hearing by the Supreme Court was denied January 18, 1956.

---

*Assigned by Chairman of Judicial Council.