[Civ. No. 6515. Fourth Dist. May 18, 1961.]

ARCHIE SARTEN, Plaintiff and Respondent, v. ANTONIO J. POMATTO et al., Defendants and Appellants.

JEANNETTE POMATTO, Plaintiff and Respondent, v. ARCHIE SARTEN, Defendant and Appellant.

(Consolidated Cases.)

Vizzard, Baker, Sullivan & McFarland and James Vizzard for Defendants and Appellants in common count action and for Plaintiff and Respondent in equitable action.

Deadrich & Bates and Kenneth H. Bates for Defendant and Appellant in equitable action and Plaintiff and Respondent in common count action.

COUGHLIN, J.—This is an appeal from a single judgment in two consolidated actions: (1) the first being upon a common count for money had and received, hereinafter referred to as the common count action; and, (2) the second seeking equitable relief from a default judgment on the ground of fraud and mistake, hereinafter referred to as the equitable action.

## COMMON COUNT ACTION

This is an action to recover $10,000 paid as a deposit in connection with the proposed sale of a motel; a trial was had upon the issues presented as between the plaintiff and respondent, Archie Sarten, and the defendants and appellants,

John H. Brown and Antonio J. Pomatto; judgment went for the plaintiff; and the defendants appeal contending that the evidence is insufficient to support certain material findings.

Under these circumstances, it is pertinent to observe that the statement of facts on appeal is governed by the oft-repeated rule that:

"[I]n examining the sufficiency of the evidence to support a questioned finding, an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion." (*Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140, 142 [134 P. 1157]; *Thomas* v. *Hunt Mfg. Corp.,* 42 Cal.2d 734, 736 [269 P.2d 12].)

Brown, who was a licensed real estate broker, had been employed by Pomatto to sell the latter's motel; obtained an offer from Sarten through a saleslady named Self to purchase the motel for $320,000; received a check for $10,000 from Sarten as a deposit; and issued a receipt therefor which set forth the terms of an offer to purchase. This receipt was signed by Brown, acting through Self, as broker; below this signature was the sentence, "I agree to purchase the above described property on the terms and conditions herein stated"; and below this sentence Sarten signed as purchaser. It appears that Sarten planned to borrow additional money on the motel for the purpose of adding additional units thereto and, for this reason, the proposed agreement provided that Pomatto would subordinate a second deed of trust, to be given him as part of the purchase price, to a first deed of trust and thus permit Sarten to borrow $100,000. This deposit receipt was presented to Pomatto who modified it, by inserting a provision that the subordination would be made when Sarten submitted plans for an additional 25 units and a coffee shop, and then signed the modified receipt under the sentence, "I agree to sell the above described property on the terms and conditions herein stated, and agree to pay to the above signed agent as commission the sum of $10,000 note and T D Dollars Payable $300.00 per mo. @ 6% int." The deposit receipt was dated March 12, 1957, but was signed by the parties on March 13, 1957.

Sarten was advised of the modification; refused to accept it; was told by Brown that he had communicated with Pomatto and that he believed that if Sarten would put up a certified check in lieu of his personal check as a deposit that

Pomatto would accept the original offer. The next day, following a conference between the parties, Sarten substituted a $10,000 certified check for the personal check previously deposited. Sarten testified that at this conference he objected to the modification proposed by Pomatto, and that he substituted the certified check as a deposit in support of his original offer, but Pomatto and Brown testified that Sarten agreed to accept the modification. The court accepted Sarten's version and found accordingly.

The day after the receipt of the certified check, Brown and Pomatto opened an escrow, deposited the check therein; caused the preparation of escrow instructions under date of March 18, 1957, which included a provision in accord with the modification that Pomatto had added to the deposit receipt, added provisions not contained therein, i.e., that Sarten might not "finance for more than 71% of the actual cost of the completed addition," would execute a chattel mortgage to secure payment of the purchase price and would assume a lease purchase agreement and advertising service agreement, and modified the term of payment under the note and second deed of trust to be given Pomatto as part payment by providing that the whole thereof should become due upon the expiration of 12 years. The next day these proposed instructions were amended by providing that the first deed of trust might be increased by $75,000 instead of the originally contemplated $100,000, and requiring that the payment on the second deed of trust should equal 1 per cent of the amount thereof, which would have increased the monthly payments substantially. None of the parties signed these instructions. Less than a week later, i.e., March 25th, Brown withdrew the $10,000 certified check from the escrow and in lieu thereof deposited $1,000. On March 26, apparently following the receipt of a telephone communication from Brown stating that Pomatto had set up the foregoing escrow, Sarten sent a telegram to both Brown and Pomatto stating: "In view of the fact that my offer of March 12 was not accepted within time provided exactly as offer was made as I have heretofore advised you the offer was not extended and will not be renewed."

On the same day Brown wrote Sarten confirming his previous telephone conversation and stated that Pomatto had deposited a grant deed in escrow. This statement was incorrect. Pomatto at no time placed any deed in escrow, and at the time in question, had not signed the subject escrow instruc-

tions. What may be described as further negotiations continued. On April 4, Pomatto caused new instructions to be prepared. These did not conform to the terms of the deposit receipt either in its original or modified form. Instead, they contained the additional and modifying provisions contained in the instructions of March 18th and added a further provision which would require Sarten to pay a $100 attorney's fee, and included subordination provisions which required that any additional financing should be used only to construct 23 to 26 new units and a coffee shop, that plans must be submitted and approved before consent to subordination would be given, and that refinancing should be restricted to 71 per cent of the actual cost of the completed additions. These instructions were signed by Pomatto but not by Sarten. On the next day, an attorney who represented Sarten caused the preparation of escrow instructions by the same escrow company; these omitted all of the additions or modifications contained in the Pomatto instructions; but did include the modified subordination provisions contained in the deposit receipt although, the following day, the attorney requested that the latter provisions be stricken, for the reason that he had no authority to include them. Sarten testified that he never authorized his attorney to cause the preparation of any escrow instructions. Neither of the parties signed these instructions.

The deposit receipt provided that the escrow should be completed by April 14th. On April 16th Brown, in effect, caused the escrow to be cancelled; authorized the escrow company to retain its charges from the $1,000 deposit; and withdrew the balance thereof, from which he paid $750 to Pomatto and a $100 attorney's fee on his behalf. The testimony of Sarten and the conduct of the parties which followed their signing of the deposit receipt support the conclusion that they never entered into an agreement to purchase and sell; that their respective offers never were accepted; that Sarten never consented to the modification in question; and that the contention of the defendants attacking the sufficiency of the evidence to support the findings of the trial court in this regard is without merit.

Even though the conduct of Sarten, in some particulars, may have supported an inference in favor of the defendants' position, such a concept of the record merely produces conflicting inferences; the trial court was not required to accept

the inferences relied upon by them; and, under such circumstances, on appeal, it will be assumed that it rejected any inference in conflict with the findings made.

If no agreement had been reached, Sarten was entitled to the return of his deposit. (*Christy* v. *Drapeau*, 22 Cal.App. 2d 582 [71 P.2d 940].) This conclusion renders unnecessary a determination of the alternate issue, based on the assumed existence of the deposit receipt agreement, as to whether Sarten had defaulted thereunder.

The appellant Pomatto contends that, in any event, the judgment against him should not have exceeded $750; that this was the amount he received; and that such fact limits his liability under the common count cause of action. In support of this contention he relies upon the general rule that ordinarily a seller's broker has no authority to accept a deposit from a prospective purchaser, and when he does so he is acting as agent for the purchaser and not the seller. (*Ernst* v. *Searle*, 218 Cal. 233, 239 [22 P.2d 715]; *Hicks* v. *Wilson*, 197 Cal. 269, 274 [240 P. 289]; *Smeade* v. *Rosen*, 121 Cal.App. 79, 84 [8 P.2d 507]; *Coover* v. *Cox*, 95 Cal.App. 1, 5 [272 P. 343]; *Schnier* v. *Percival*, 83 Cal.App. 470, 474 [256 P. 1109]; *Gold* v. *Phelan*, 58 Cal.App. 471, 476 [208 P. 1001].) However, this general rule does not apply where the evidence supports a conclusion that such a broker actually had authority to receive a deposit on behalf of the seller (*Hicks* v. *Wilson, supra,* 197 Cal. 269, 274; *Schnier* v. *Percival, supra,* 83 Cal.App. 470, 478), whether that authority rests upon an agency "created by a precedent authorization or by a subsequent ratification." (*Schnier* v. *Percival, supra,* 83 Cal.App. 470, 478; Civ. Code, § 2307.)

The evidence before us supports the conclusion that Brown received the $10,000 certified check as the agent of Sarten for the purpose of depositing it in escrow. In addition, however, the evidence also supports the conclusion that Brown was authorized to receive the check as a deposit on the purchase price as an agent of Pomatto, and that thereafter he used the proceeds of that check as such agent. After Pomatto learned that the original deposit made by Sarten was of a personal check he, Pomatto, said to Brown: "I am not accepting a personal check. It has got to be a cashier's check or a certified check"; thereupon all three of them went to the bank where Sarten obtained the certified check and in the presence of Pomatto delivered it to Brown. In the light of this testimony, it must be concluded that Pomatto was acting

under the assumption that Brown was "accepting" the check for him. Thereafter Pomatto and Brown went to the escrow company where they caused the preparation of escrow instructions, and the check was placed with that company. Sarten delivered the check to Brown with instructions to place it in escrow. However, there is no doubt that the certified check was given in lieu of the personal check, and that both Pomatto and Brown accepted it as a part of the transaction initiated by the deposit receipt. In that receipt it is stated that the deposit, "at the option of the Agent," may "be retained as the consideration for the execution of this agreement, and for services rendered." The subsequent conduct of Pomatto and Brown indicate that they considered the deposit made by Sarten as a down payment subject to forfeiture under the deposit receipt agreement, which they contend was an enforceable contract of purchase and sale; and that upon failure of completion of the escrow within the prescribed 30-day period they claimed the down payment as a matter of right. Pomatto testified that when he found out that Brown had withdrawn the certified check from the escrow he was surprised that Brown had not talked to him about doing so, and that he "wondered why the escrow department did that." This state of mind can be attributed only to the fact that Pomatto believed that he had some claim on the check. Indicative of the dual activity involved, is the testimony of Pomatto that Brown told him *"we* had a right to get" the check. (Emphasis added.) At or immediately prior to termination of the escrow, Brown, according to his testimony, talked to Pomatto about disposition of the $10,000 down payment; was told by Pomatto that he, Brown, had earned his commission and should retain $9,000 as payment thereof; and from the remaining $1,000, with Pomatto's approval, paid the escrow charges, an attorney's fee and $750 to Pomatto. The escrow charges and the attorney's fee, under the circumstances, clearly were Pomatto's obligations.

The court found that Brown, as agent for Pomatto, "received from plaintiff the sum of $10,000.00, as a deposit to be placed in escrow" and that Brown and Pomatto "jointly, took and converted the $10,000.00 deposit made by plaintiff, for their own use and benefit." The record before us, as related in the foregoing statement of facts, supports these findings.

The defendant Pomatto claimed, however, that because he

received only $750 that no more than this amount may be recovered from him in an action for money had and received. Reliance is placed on the general rule that in an action upon a common count a defendant is liable only for the money he has received. (*Pollak* v. *Staunton,* 210 Cal. 656, 665 [293 P. 26]; *Whittier* v. *Home Savings Bank,* 161 Cal. 311, 318-319 [119 P. 92]; *Minor* v. *Baldridge,* 123 Cal. 187, 189 [55 P. 783]; *United States Credit Bureau, Inc.* v. *Sanders,* 103 Cal.App.2d 806, 816 [230 P.2d 849]; *Smith* v. *Bach,* 54 Cal. App. 236, 238 [201 P. 611]; *Smith* v. *Bach,* 53 Cal.App. 63, 65 [199 P. 1106].) On the other hand, where two defendants jointly participated in the receipt of money, both are liable although one of them may not be the actual recipient. (*Strutzel* v. *Williams,* 109 Cal.App.2d 512, 514-515 [240 P.2d 988].) Moreover, a defendant in such an action may be liable for money applied to his benefit with his consent even though the money actually is received by another. (*Gray* v. *Huffaker,* 176 Cal. 516 [169 P. 1038].) In the case at bar, as found by the court, both of the defendants converted the $10,000 in question; they subjected this money to their exclusive dominion and control; they may have believed that they had a right to do so, but the fact remains that, because the agreement upon which they justified their action did not exist, they did not have this right. The evidence before us sustains the conclusion that both defendants caused the money to be placed in escrow; that Pomatto believed the money should not have been withdrawn from escrow without his consent; and that both he and Brown participated in the determination respecting its disposition. The evidence also sustains the conclusion that Pomatto as well as Brown was benefitted by the disposition made; Pomatto received $750 in cash; his obligations to pay the escrow charges, and his attorney's fee were satisfied; and any liability upon his part in favor of Brown for a brokerage fee was discharged. Pomatto claims that he was not liable to Brown for a real estate commission and therefore was not benefitted by this payment. However, the evidence shows that Pomatto, through the deposit receipt, expressly agreed to pay Brown a commission of $10,000; that he complained about this amount and Brown agreed to accept $9,000; that subsequently, in two different escrow instructions, Pomatto expressly agreed to pay Brown $9,000; and that, thereafter, Pomatto told Brown that he, Brown, had earned and was entitled to his commission. It may be inferred that Pomatto's authorization to retain the $9,000 con-

stituted a payment by him to Brown for services rendered to him and for which he believed Brown should be paid. Under these circumstances, whether Brown's claim was legally enforceable is of no consequence. If Brown had paid all of the $10,000 to Pomatto who, in turn, paid the escrow charges, the attorney's fee and the commission, little doubt would be entertained respecting his liability under the common count. The same result occurred through the facts under consideration; Brown obtained Pomatto's permission respecting the payments made; and in retaining $9,000 at Pomatto's suggestion, in effect paid himself $9,000 at Pomatto's direction. The evidence which supports an inference that Pomatto claimed the $750 paid to him also supports the inference that he claimed the remainder of the $10,000 which was paid to others at his direction.

### EQUITABLE ACTION

Jeannette Pomatto, the wife of Antonio Pomatto and co-owner of the motel, was named as a defendant in the common count action. Upon verified proof of service of summons, her default was taken. About 10 months later a judgment against her in the sum of $10,000 was entered on this default. Shortly thereafter she learned of this fact and moved the court to set aside her default and the judgment entered thereon upon the dual ground, (1) that she was entitled to relief under section 473 of the Code of Civil Procedure because of inadvertence, surprise and excusable neglect, and (2) that the court was without jurisdiction to enter a judgment against her because she had not been served with summons. This motion was heard and denied. Thereupon the instant action for equitable relief was instituted in which Mrs. Pomatto alleged that she had not been served with summons in the common count action; claimed that her default had been entered therein through extrinsic mistake; and further alleged that the judgment therein resulted from a fraud upon the court in that Sarten's verified complaint in that action falsely stated that she had received the $10,000 in question. The equitable action was consolidated with the common count action by pretrial order. Judgment was entered in favor of Mrs. Pomatto and Sarten appeals.

As a basis for this judgment the trial court found as true the foregoing allegations respecting the lack of service of summons, but found as untrue the allegations respecting mistake and fraud. These findings were prepared by the at-

torney for Sarten as a part of those in support of the judgment in the consolidated actions, i.e., that upon the common count and that on the case for equitable relief. A little over three weeks after the court had signed and filed the aforesaid findings and judgment, the attorney for Mrs. Pomatto prepared and presented an additional set of findings in which the allegations with respect to mistake and fraud as well as failure of service of summons were found to be true. These also were signed and filed by the trial judge. No motion had been made to set aside the former findings or judgment; there is neither pleading, proof nor claim that the original findings were entered through clerical error or mistake; and the issue of duplicate findings was not raised or passed upon at the hearing of Sarten's motion for a new trial of the equitable action. Under these circumstances, the subsequent findings are of no legal consequence and must be disregarded. (*Ayres* v. *Burr*, 132 Cal. 125, 127 [64 P. 120]; *Daniels* v. *Superior Court*, 132 Cal.App.2d 700, 701 [282 P.2d 1000]; *McKannay* v. *McKannay*, 68 Cal.App. 709, 713 [230 P. 218].) Under the circumstances, we need not pass upon the sufficiency of the allegations or proof with respect to the issue of extrinsic fraud or mistake.

Sarten contends that the judgment in the equitable action should be reversed because he was led to believe that the issue respecting the alleged failure of service of summons was not to be considered. This contention is well taken. Apparently there was some indecision between the parties as to whether the motion in the principal action was res judicata on this issue. At the pretrial conference it was agreed that the parties would consider the question of law involved and make a decision with respect thereto prior to trial. Immediately before trial the attorney for Sarten advised the court of this situation and closed his remarks by saying: "[A]s I understand, no issue is being made as to the service on Jeannette Pomatto." The court took up the discussion and concluded its remarks by saying: "[B]ut anyway that is res judicata." The attorney for Mrs. Pomatto made no reply and took no part in the discussion. Thereafter Mrs. Pomatto testified that she did not know that she had been sued until an abstract of the judgment against her had been recorded; and, during the course of cross-examination by the attorney for Brown, who was not a party to the equity action, Mrs. Pomatto's daughter testified that the "papers" were not served on her mother but were given to her; that

her father gave her the ''papers''; and that she mailed them to Brown who had agreed to defend the action. This is the only evidence in support of the questioned finding. The clerk's transcript on appeal contains affidavits filed in connection with the motion to set aside the default judgment in question; in one such affidavit Mrs. Pomatto's daughter stated that the ''papers'' were given to her father; she did not state that they were given to her; and in another affidavit, the deputy sheriff who made the service stated that he knew Mrs. Pomatto's daughter and in the presence of Mr. and Mrs. Pomatto and the daughter he delivered copies of the summons and complaint to both Mr. and Mrs. Pomatto. It is apparent to this court that evidence on the issue respecting service of summons upon Mrs. Pomatto was not fully presented because neither her attorney nor the attorney for Sarten believed that this issue was before the court. Under these circumstances, it was manifestly unfair for the trial court to base its decision in this action on its finding in respect to that issue. Even though an issue is presented by the pleadings the parties may delete its consideration by stipulation. (*Bemer* v. *Bemer,* 152 Cal.App.2d 766, 771 [314 P.2d 114]; *Corbett* v. *Benioff,* 126 Cal.App. 772, 777 [14 P.2d 1028]; *Smith* v. *Masonic Mines Assn.,* 57 Cal.App. 172, 174 [206 P. 1008].) The conduct of the parties to this case was tantamount to such a stipulation. Mrs. Pomatto, through the silent acquiescence of her attorney, lulled Sarten into the belief that the issue in question was not to be tried, and she is estopped to assert the court's finding on that issue in support of her judgment. (*California Lettuce Growers, Inc.* v. *Union Sugar Co.,* 45 Cal.2d 474, 483 [289 P.2d 785, 49 A.L.R.2d 496]; *Estate of Uniack,* 137 Cal.App.2d 222 [289 P.2d 820]; *Crittenden* v. *McCloud,* 106 Cal.App.2d 42, 48 [234 P.2d 642].)

 Sarten also contends that the order in the common count action denying Mrs. Pomatto's motion to set aside the default judgment entered against her is res judicata of the issue as to whether she was served with summons. Mrs. Pomatto contends that an order denying a motion to set aside a fraudulently procured judgment does not bar a subsequent action in equity directed to the same purpose. Statements purporting to express a general rule in support of this contention are found in *Lake* v. *Bonynge,* 161 Cal. 120, 132 [118 P. 535]; *Bacon* v. *Bacon,* 150 Cal. 477, 484 [89 P. 317]; *Estudillo* v. *Security Loan etc. Co.,* 149 Cal. 556, 565 [87

P. 19]; *Sternbeck* v. *Buck*, 148 Cal.App.2d 829, 831-832 [307 P.2d 970]; *Wilson* v. *Wilson*, 55 Cal.App.2d 421, 426 [130 P.2d 782]; *Winn* v. *Torr*, 27 Cal.App.2d 623, 627 [81 P.2d 457]; *Anglo-California Trust Co.* v. *Kelley*, 117 Cal.App. 692, 695 [4 P.2d 604]; *Jeffords* v. *Young*, 98 Cal.App. 400, 406 [277 P. 163]; *Carp* v. *Superior Court*, 76 Cal.App. 481, 482-483 [245 P. 459]; see also *Newman* v. *Barnet*, 165 Cal. 423, 425-427 [132 P. 588]. The rule as stated in *Bacon* v. *Bacon, supra,* 150 Cal. 477, 484-485, has a qualified application, for the court there said: ''. . . an adverse decision on such a motion does not *necessarily* bar a subsequent suit to vacate the judgment for the same cause.'' (Emphasis added.)

This qualification, undoubtedly, stems from a consideration of the reasons for the rule. In this regard it has been said that a motion in the principal action to set aside a judgment is not an adequate substitute for the right to proceed by an independent action in equity (*Estudillo* v. *Security Loan etc. Co., supra,* 149 Cal. 556, 564-565; *Bacon* v. *Bacon, supra,* 150 Cal. 477, 484); that the summary disposition of an issue upon motion should not preclude a party from the orderly presentation of his case by an appropriate action. (*Winn* v. *Torr, supra,* 27 Cal.App.2d 623, 627; see also *People* v. *Harrison,* 84 Cal. 607, 608-609 [24 P. 311]; *Cowan* v. *Cowan,* 72 Cal.App.2d 868, 872 [166 P.2d 21].) However, this reasoning is not applicable where the trial of an issue on a motion is as comprehensive as the trial of the same issue in a suit. In *Darlington* v. *Basalt Rock Co.,* 188 Cal.App.2d 706, 710 [10 Cal.Rptr. 556], after a careful analysis of most of the foregoing cases, the court concluded as follows:

''We recognize fully that the mere fact that issues might have been raised on the motion does not bar presentation of those issues in a later action if in fact they were not presented on the motion. Nor do we decide that the mere presentation of issues by affidavits supporting a motion is a bar to the later action, if the opportunity to present evidence was withheld in the discretion of the court to which the motion was made. We do hold that detailed presentation of the issues of fraud and mistake on a motion to vacate, with full opportunity at a hearing to develop the issues by oral testimony, may bar a subsequent action to set aside the order attacked by the earlier motion.''

This conclusion comports with the qualified application of the rule heretofore noted.

 In the case at bar, it does not appear from the record

before us whether the parties had an opportunity to litigate the issue of service of summons in a manner commensurate with its consideration in an action in equity, and this court should not now make a determination whether the order denying the subject motion precluded reconsideration of that issue in a subsequent action in equity. Although the plaintiff's complaint in her equitable action refers to the motion to set aside the default judgment against her, there is no proof as to the manner in which this motion was considered, i.e., whether restricted to proof by affidavit or supplemented by oral testimony.

As the only basis for the judgment entered on the issues raised by the equitable action is the finding of a lack of service of summons, and as Mrs. Pomatto is estopped to rely upon this finding, the judgment in her favor must be reversed. Under the circumstances heretofore noted the case presented by that action should be remanded for a new trial on all issues.

That part of the judgment in favor of Archie Sarten and against Antonio J. Pomatto and John H. Brown, being that part of the judgment on the common count action, is affirmed. That part of the judgment in favor of Jeannette Pomatto and against Archie Sarten, being that part of the judgment on the equitable action, is reversed and the case is remanded for a new trial on the issues presented by the latter action. Sarten to recover his costs on appeal.

Griffin, P. J., concurred.