Filed 1/23/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RUTHERFORD HOLDINGS, LLC, Plaintiff and Appellant, v. PLAZA DEL REY et al., Defendants and Respondents. | H038303 (Santa Clara County Super. Ct. No. 1-10-CV175989) |

Rutherford Holdings, LLC (Rutherford) appeals from a judgment of dismissal entered after the trial court sustained demurrers without leave to amend filed by defendants Plaza Del Rey (PDR) and Shereen Caswell (Caswell) (collectively defendants).

Rutherford contracted to purchase a mobile home park from PDR. Pursuant to the purchase agreement, Rutherford delivered a $3 million deposit to PDR, which the agreement provided was nonrefundable unless PDR materially breached the purchase agreement or failed or refused to close. The closing date came and went and neither party performed; PDR never tendered the deed to Rutherford, and Rutherford never tendered the full purchase price to PDR. Rutherford sued to recover the deposit under various theories of recovery.

Defendants successfully demurred to Rutherford's initial complaint and first amended complaint, but Rutherford was--in large part--granted leave to amend those pleadings. The court sustained defendants' demurrers to Rutherford's second amended complaint without leave to amend. We reverse the judgment with directions and remand.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     *The Purchase Agreement and the Parties' Failure to Tender Performance*

On May 23, 2008, Rutherford and PDR entered into a purchase agreement under which Rutherford agreed to buy, and PDR agreed to sell, a parcel of real property in Sunnyvale, California, for $110 million. Caswell signed the agreement as PDR's vice president of operations. Section 1.2 of the purchase agreement required Rutherford to deliver a $3 million "deposit" to PDR by May 27, 2008, and provided that the deposit "shall be nonrefundable to [Rutherford], except only in the event of [PDR's] material breach . . . or [PDR's] failure or refusal to close." Rutherford timely delivered the deposit.

The purchase agreement also contained a liquidated damages provision in section 6.2, which provided that if Rutherford breached the purchase agreement, PDR would be "entitled, as [its] sole and exclusive remedy, to retain the deposit as liquidated damages," and that "[s]uch retention of the deposit by [PDR] is intended to constitute liquidated damages . . . pursuant to sections 1671, 1676 and 1677 of the California Civil Code . . . ."

The parties amended the purchase agreement to extend the closing date to January 15, 2009. In January 2009, Rutherford asked Caswell whether PDR was interested in providing "seller financing" to Rutherford in connection with the purchase. Caswell responded that PDR would consider providing seller financing, and the parties again amended the purchase agreement to extend the closing date, this time to March 31, 2009.

---

[1] Because this matter comes to us following a judgment sustaining demurrers without leave to amend, we assume the truth of the material facts properly pleaded in Rutherford's complaints. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Facts appearing in exhibits attached to the complaint also are accepted as true and are given precedence, to the extent they contradict the allegations. (*Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627.)

Prior to the March 2009 closing date and while the parties were in discussions regarding seller financing, Caswell told Rutherford that PDR could reduce its tax obligations if it was not in contract to sell the property. According to Caswell, if the purchase did not close and the closing date was not extended in writing, PDR could pay taxes on the property's appraised value, as opposed to the higher agreed purchase price. Caswell promised Rutherford that PDR would sell Rutherford the property after the closing date and after PDR had filed its tax returns in mid to late 2009. She explained that PDR did not want to document that in the agreement because doing so could undermine PDR's ability to use the property's appraisal value to obtain a tax benefit.

In reliance on Caswell's representations, Rutherford did not tender the full purchase price on March 31, 2009, but it "could have and would have" done so absent those representations. At a meeting about the seller financing option on April 6, 2009, Caswell again represented to Rutherford that PDR would sell Rutherford the property after filing its tax returns. On October 26, 2009, PDR informed Rutherford that the purchase agreement was no longer in place and that Rutherford had "lost" its $3 million deposit.

### B. *The Initial Complaint and Demurrer*

On July 1, 2010, Rutherford filed its initial complaint against defendants, alleging causes of action for (1) money had and received; (2) unjust enrichment; (3) conversion; (4) promissory estoppel; (5) declaratory relief; and (6) promissory fraud. Rutherford alleged Caswell was liable under an alter ego theory. The trial court sustained defendants' demurrers to the complaint with leave to amend.

### C. *The First Amended Complaint and Demurrer*

Rutherford filed a first amended complaint on February 9, 2011, again alleging claims for (1) money had and received; (2) unjust enrichment; (3) conversion; (4) promissory estoppel; (5) declaratory relief; and (6) promissory fraud. Rutherford also

added a claim for breach of contract, alleging that PDR breached its contractual obligation to return the deposit to Rutherford in the event PDR failed to close the sale.

Rutherford again alleged alter ego liability against Caswell, and the court concluded those allegations were sufficient. The trial court sustained PDR's demurrer without leave to amend the claims for conversion, promissory estoppel, and declaratory relief. The court's order granted Rutherford leave to amend its breach of contract, promissory fraud, money had and received, and unjust enrichment causes of action.

### D.    *The Second Amended Complaint and Demurrer*

In its second amended complaint, Rutherford asserted claims for (1) breach of contract; (2) promissory fraud; (3) money had and received; and (4) unjust enrichment. Defendants again demurred, and the court sustained the demurrers without leave to amend. On March 14, 2012, the trial court entered a judgment of dismissal against Rutherford. Rutherford timely filed its notice of appeal on May 7, 2012.

## II.    DISCUSSION

### A.    *The Standard of Review*

We review an order sustaining a demurrer de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.) Because a demurrer tests only the legal sufficiency of the pleading, the facts alleged in the pleading are deemed to be true. (*Berg & Berg Enterprises*, *LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1034.) We do not review the validity of the trial court's reasoning, and therefore will affirm its ruling if it was correct on any theory. (*Ibid.*) Nor are we "limited to plaintiff[']s theory of recovery in testing the sufficiency of [its] complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory." (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103.)

4

"Where a demurrer is sustained without leave to amend, [we] must determine whether there is a reasonable probability that the complaint could have been amended to cure the defect; if so, [we] will conclude that the trial court abused its discretion by denying the plaintiff leave to amend. [Citation.] The plaintiff bears the burden of establishing that it could have amended the complaint to cure the defect." (*Berg & Berg Enterprises*, *LLC v. Boyle*, *supra*, 178 Cal.App.4th at p. 1035.)

## B. *Breach of Contract Claim*

"A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1388.)

"In a contract for the sale of real estate the delivery of the deed and the payment of the purchase price are dependent and concurrent conditions." (*King v. Stanley* (1948) 32 Cal.2d 584, 590.) Where the parties' contractual obligations constitute concurrent conditions, "neither party is in default until one party performs or tenders performance." (*Ninety Nine Investments, Ltd. v. Overseas Courier Service* (*Singapore*) *Private, Ltd.* (2003) 113 Cal.App.4th 1118, 1135 (*Ninety Nine*).) Here, both parties failed to perform the concurrent conditions before closing, "result[ing] in a discharge of both parties' duty to perform." (*Pittman v. Canham* (1992) 2 Cal.App.4th 556, 560.) Thus, as Rutherford concedes, it cannot argue that PDR breached the purchase agreement by failing to perform its duty to tender the deed.[2]

Rutherford contends that it *can*, however, sue PDR for breaching its separate contractual obligation to return the deposit where it "fail[s] or refus[es] to close" under

---

[2] PDR is likewise precluded from arguing that Rutherford breached the purchase agreement by failing to tender the full purchase price.

5

section 1.2, and Rutherford is not in breach.[3] Defendants respond that Rutherford cannot state a breach of contract claim because (1) the contract does not obligate PDR to return the deposit unless PDR is in breach of the contract and (2) in any event, Rutherford's nonperformance precludes it from stating *any* breach of the purchase agreement.

The parties' dispute reflects their competing interpretations of the purchase agreement. Though not apparent from the complaint, Rutherford's appellate brief clarifies that, in its view, the phrases "material breach" and "failure or refusal to close" in section 1.2 must be given independent meaning, such that PDR may be required to return the deposit not only when it is in material breach of the agreement (i.e., fails to deliver the deed), but also when it otherwise "fail[s] or refus[es] to close." Rutherford's brief also sets forth, somewhat inarticulately, its view that PDR's promise to return the deposit was independent of Rutherford's promise to tender the full purchase price, such that Rutherford's own nonperformance does not excuse PDR's failure to return the deposit. (*Verdier v. Verdier* (1955) 133 Cal.App.2d 325, 334 ["[i]f the [two] covenants are independent, breach of one does not excuse performance of the other"].) Defendants, by contrast, appear to equate the phrases "material breach" and "failure or refusal to close" in section 1.2. They also maintain that Rutherford's nonperformance excused all of PDR's contractual duties.

"Where a complaint is based on a written contract which it sets out in full, a general demurrer to the complaint admits not only the contents of the instrument but also any pleaded meaning to which the instrument is reasonably susceptible." (*Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 239 (*Aragon-Haas*).) " '[W]here an ambiguous contract is the basis of an action, it is proper, if not essential, for a plaintiff to allege its own construction of the agreement. So long as the pleading does

---

[3] Section 1.2 of the purchase agreement provides that the deposit "shall be nonrefundable to [Rutherford], except only in the event of [PDR's] material breach . . . or [PDR's] failure or refusal to close."

6

not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement.' " (*Ibid.*)

Here, the purchase agreement is reasonably susceptible of the meaning Rutherford ascribes to it. "While [that] interpretation . . . ultimately may prove invalid," at the pleading stage, it is sufficient that the agreement is reasonably susceptible of this meaning. (*Aragon-Haas*, *supra*, 231 Cal.App.3d at p. 239.) That said, because Rutherford did not allege this interpretation in its complaint, the court correctly sustained the demurrer. (*Ibid.*) However, we conclude Rutherford should be given the opportunity to amend its complaint to allege its reasonable interpretation of the purchase agreement and facts showing that PDR "fail[ed] or refus[ed] to close" in some manner other than by materially breaching the agreement by not tendering the deed. If Rutherford can amend its complaint in this manner, it may be able to state a cause of action for breach of contract. Therefore, we conclude the trial court erred by sustaining the demurrer on this cause of action without leave to amend.

### C. *Money Had and Received Claim*

To prevail on a common count for money had and received, the plaintiff must prove that the defendant is indebted to the plaintiff for money the defendant received for the use and benefit of the plaintiff. (*Pike v. Zadig* (1915) 171 Cal. 273, 276; *Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 460.) In an action on an express contract, a claim for money had and received is permitted where there has been a total failure of consideration. (*Brown v. Grimes* (2011) 192 Cal.App.4th 265, 281.) " 'Failure of consideration is the failure to execute a promise, the performance of which has been exchanged for performance by the other party.' " (*Taliaferro v. Davis* (1963) 216 Cal.App.2d 398, 410.) "[T]he failure of the consideration is total . . . [where] nothing of value has been received under the contract by the party" seeking restitution. (*Richter v. Union Land etc. Co.* (1900) 129 Cal. 367, 373 (*Richter*).) Where the failure of the

consideration is total, "the law implies a promise on the part of the other to repay what has been received by him under the contract." (*Ibid.*) Such a promise is implied because the "defendant cannot in equity and good conscience retain the benefits of the agreement and repudiate its burdens." (*Holt v. Ravani* (1963) 221 Cal.App.2d 213, 216.)

Rutherford alleges it paid the $3 million deposit to PDR as part of the purchase price for the property. Read liberally, the complaint alleges that Rutherford paid the deposit in consideration of PDR's promise to transfer the deed at closing. This is a reasonable reading of the purchase agreement, and therefore we deem it admitted on demurrer. (*Aragon-Haas*, *supra*, 231 Cal.App.3d at p. 239.) Under that interpretation of the agreement, PDR's failure to perform its promise to transfer the deed resulted in a total failure of consideration and supports a claim for money had and received.

Defendants argue that Rutherford's failure to tender payment bars it from relying on failure of consideration. While it is true that a party who is in *default* "cannot rescind for the other party's breach or failure of consideration" (*Nelson v. Spence* (1960) 182 Cal.App.2d 493, 499), here neither party is in default because neither performed. (*Ninety Nine*, *supra*, 113 Cal.App.4th at pp. 1134-1135.) Therefore, we conclude Rutherford can rely on the alleged total failure of consideration to state a claim for money had and received. (See *Cleary v. Folger* (1893) 33 P. 877, 878 ["when both parties have failed to perform the contract, either may elect to consider it rescinded and recover moneys paid upon it."].)

Defendants also suggest that the deposit was akin to an option to purchase the property and was paid in consideration for that option, which Rutherford did not exercise by the closing date. In that case, the money would be for PDR's use and benefit and would not support a claim for money had and received. Defendants may ultimately prevail on that point, but at this stage we credit Rutherford's interpretation. (*Aragon-Haas*, *supra*, 231 Cal.App.3d at p. 239.) Defendants also suggest that Rutherford was required to seek rescission to state a claim for money had and received, but the Supreme

8

Court has held that "where the failure of the consideration is total, . . . [it is not] necessary that a formal rescission be made before bringing suit." (*Richter*, *supra*, 129 Cal. at p. 373.)

For the foregoing reasons, we conclude the trial court erred in sustaining the demurrer as to the money had and received cause of action.

### D. *Unjust Enrichment Claim*

Rutherford's fourth cause of action is labeled as one for "unjust enrichment." "Unjust enrichment is not a cause of action, however, or even a remedy, but rather ' " 'a general principle, underlying various legal doctrines and remedies' " . . . . [Citation.] It is synonymous with restitution.' " (*McBride v. Boughton* (2004) 123 Cal.App.4th 379, 387.) Like the trial court, we will construe the cause of action as a quasi-contract claim seeking restitution.

"[A]n action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." (*Lance Camper Manufacturing Corp. v. Republic Indemnity Co.* (1996) 44 Cal.App.4th 194, 203.) However, "restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." (*McBride v. Boughton*, *supra*, 123 Cal.App.4th at p. 388.) Thus, a party to an express contract can assert a claim for restitution based on unjust enrichment by "alleg[ing in that cause of action] that the express contract is void or was rescinded." (*Lance Camper Manufacturing Corp. v. Republic Indemnity Co.* *supra*, at p. 203.) A claim for restitution is permitted even if the party inconsistently pleads a breach of contract claim that alleges the existence of an enforceable agreement. (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1389.)

In its claim seeking restitution, Rutherford does not allege that the deposit is not covered by the purchase agreement. Rather, it alleges that if the agreement "provided for a non-refundable deposit regardless of whether [Rutherford] was in breach," as

9

defendants contend, then "the Agreement is contrary to public policy and is unlawful as the Deposit provision of the Agreement acts as an unlawful penalty and forfeiture provision."

"[A]ny provision by which money or property would be forfeited without regard to the actual damage suffered would be an unenforceable penalty." (*Ebbert v. Mercantile Trust Co.* (1931) 213 Cal. 496, 499.) Rutherford argues that PDR did not suffer any damages because Rutherford was not in breach, and thus any provision allowing PDR to retain any of the deposit would be an unenforceable penalty.

Defendants respond that the deposit constitutes a forfeiture only if PDR was able to sell the property to another buyer for more than the $110 million purchase price set forth in the purchase agreement. For that argument, defendants rely on cases in which the seller profited from the buyer's breach by selling the property for more than the defaulting buyer had agreed to pay. In those cases, the courts reasoned that allowing the seller to retain the buyer's deposit would work a forfeiture because the amount of the deposit far exceeded the damages the seller suffered, if any. (See *Kuish v. Smith* (2010) 181 Cal.App.4th 1419, 1422 [where plaintiff cancelled escrow, "defendants' retention of $600,000 of plaintiff's deposit constitutes an invalid forfeiture" because "defendants sold the property for $1 million more than plaintiff had agreed to pay . . . [and did] not contend they suffered $600,000 in actual damages as a result of plaintiff's actions."]; *Freedman v. The Rector* (1951) 37 Cal.2d 16.) Those cases are inapposite here, as Rutherford is not in breach because PDR did not tender the deed. (*Ninety Nine*, *supra*, 113 Cal.App.4th at pp. 1134-1135.)

As noted above, defendants also suggest that the deposit was an option payment, in which case PDR's retention would not constitute an invalid forfeiture. While that interpretation of the purchase agreement may eventually prevail, we conclude that Rutherford stated a quasi-contract claim for restitution based on unjust enrichment. In particular, we conclude Rutherford adequately alleged a reasonable interpretation of the

10

purchase agreement under which section 1.2 is void to the extent it permits PDR to retain the deposit when Rutherford has not breached, and that PDR has been unjustly enriched by retaining the deposit. Accordingly, we conclude the trial court erred in sustaining the demurrer as to the claim for restitution based on unjust enrichment.

### E. Conversion Claim

"To establish a conversion, plaintiff must establish an actual interference with his ownership or right of possession." (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 610.) To do so, the plaintiff must have "either ownership and the right of possession or actual possession [of the property] at the time of the alleged conversion thereof." (*General Motors A. Corp. v. Dallas* (1926) 198 Cal. 365, 370.) "[A] mere contractual right of payment, without more, will not suffice" to support a claim for conversion. (*Farmers Ins. Exchange v. Zerin*, *supra*, 53 Cal.App.4th at p. 452.)

Rutherford alleges that PDR converted the deposit when it refused to return it to Rutherford after failing to close. Rutherford did not have actual possession of the deposit at that time. Rather, it argues that it owned the deposit and had a right to possess it. According to Rutherford, title to the deposit never transferred to PDR because PDR never became entitled to liquidated damages. That theory differs from the complaint, where Rutherford premised its ownership right on PDR's breach, alleging that Rutherford "was the sole owner of the Deposit," "as of the passing of the close of escrow date." While that does not preclude us from considering the argument on appeal (*B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949, 959), we conclude title did transfer to PDR, such that Rutherford cannot establish ownership.

The cases Rutherford relies on for its claim that it retained ownership of the deposit are distinguishable. In some, the buyers were entitled to the return of their deposits pursuant to express escrow instructions. (*Hastings v. Bank of America* (1947) 79 Cal.App.2d 627, 629; *Widess v. Title Ins. etc. Co.* (1931) 112 Cal.App. 343, 347-348.) But here the deposit was not paid into escrow and the complaint does not allege any

11

escrow instructions. In Rutherford's other cases, the buyers were entitled to the return of their deposits because no contract ever was formed between the parties. (*Christy v. Drapeau* (1937) 22 Cal.App.2d 582, 588; *Sarten v. Pomatto* (1961) 192 Cal.App.2d 288, 294.) That is not the case here. Rutherford also relies on Miller and Starr's commentary that "[w]hen the buyer's deposit is merely given to the seller's agent pursuant to the usual terms of the deposit receipt without any additional and *specific* direction that it be placed into the purchase escrow by the broker, the buyer retains the title to the deposit and is entitled to its return until such time as the *seller's* obligation to sell becomes unconditional." (1 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 2:4, p. 15, fn. omitted.) But the cases do not appear to support that statement. Rather, they indicate that--in the absence of escrow instructions to the contrary--title to a deposit vests in the seller when the seller "accept[s] the contract." (*Holloway v. Thiele* (1953) 116 Cal.App.2d 68, 72; see also *Norris v. San Mateo County Title Co.* (1951) 37 Cal.2d 269, 273; *Landfield v. Cohen* (1948) 89 Cal.App.2d 177, 179 [buyer's act of paying "a portion of the purchase price at the time of his agreement to buy . . . is as complete a transfer of the money paid as if he had made a gift thereof."].) Accordingly, we conclude title to the deposit transferred to PDR. Because Rutherford cannot allege that it owned or possessed the deposit at the time of the alleged conversion, it cannot state a conversion claim. Therefore, the trial court correctly sustained the demurrers without leave to amend.

### F. *Promissory Fraud Claim*

" 'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) " 'Every element of the cause of action for fraud must be alleged in the proper manner (i.e., factually and specifically), and the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.' "

12

(*Committee On Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216.)

Rutherford's allegations are insufficient to satisfy the heightened pleading standard for fraud actions. Rutherford adequately alleges misrepresentations. In particular, it alleges that in March 2009, prior to the closing date, PDR (through Caswell) "promised and represented to [Rutherford] . . . that PDR would agree to sell the Subject Property and to close the Agreement after the scheduled Closing Date." Rutherford further alleges that in April 2009 Caswell again represented that PDR would sell the property to Rutherford in mid to late 2009. According to Rutherford's allegations, in October 2009 defendants reneged on those promises.

Rutherford also alleges scienter and intent to defraud, alleging that defendants knew these promises were false when they were made, and that defendants made them with the intent to deprive Rutherford of its deposit by inducing Rutherford not to tender performance.

However, Rutherford's reliance allegations lack sufficient factual content. Rutherford alleges that "[i]n reliance upon Defendants' representations, [it] did not tender payment of the purchase amount prior to the Closing Date," and that, "[b]ut for Defendants' representations . . . [it] could have and would have" done so. With regard to its ability to perform, Rutherford also alleges that "at all times before the Closing Date, [it] could have obtained the necessary financing to perform its payment obligation under the Agreement prior to the Closing Date" but that it "continued to explore the most advantageous financing terms available." Rutherford fails to allege *facts* showing that it could have obtained the necessary financing from a source other than PDR. "The conclusory allegation [it] would have obtained [such financing] does not state a cause of action." (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1500.)

Rutherford also alleges that, in reliance on defendants' representations, it did not terminate the purchase agreement and request a return of the deposit. Rutherford cannot

13

state a fraud claim based on this theory because the allegations show that its damages were not caused by its failure to terminate the purchase agreement. (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1064 ["The fraud plaintiff must also allege his damages were caused by the actions he took in reliance on the defendant's misrepresentations."].) Had Rutherford requested its deposit back after PDR failed to tender the deed on the closing date, it would have been in the very same position it is today--neither party would have performed their mutually dependent, concurrent conditions, and defendants would be taking their current position that PDR is entitled to retain the deposit. Thus, Rutherford "would have suffered the alleged damage even in the absence of the fraudulent inducement [not to terminate the agreement], [and therefore] causation *cannot* be alleged and a fraud cause of action cannot be sustained." (*Ibid.*)

For these reasons, we conclude the trial court correctly sustained the demurrers as to the promissory fraud claim. We also conclude the court did not abuse its discretion in denying Rutherford leave to amend its pleading with respect to its fraud claim as Rutherford has failed to meet its burden of demonstrating a reasonable possibility that an amendment could cure the pleading defects we have identified.

### G. *Rutherford's Alter Ego Allegations Were Sufficient*

Defendants argue that even if we reverse the judgment as to PDR, we should not reverse it as to Caswell because Rutherford failed to adequately allege that Caswell and PDR are alter egos. We conclude that Rutherford made sufficient allegations of alter ego to avoid a demurrer.

Rutherford alleged that Caswell dominated and controlled PDR; that a unity of interest and ownership existed between Caswell and PDR; that PDR was a mere shell and conduit for Caswell's affairs; that PDR was inadequately capitalized; that PDR failed to abide by the formalities of corporate existence; that Caswell used PDR assets as her own; and that recognizing the separate existence of PDR would promote injustice. These allegations mirror those held to pass muster in *First Western Bank & Trust Co. v.*

14

*Bookasta* (1968) 267 Cal.App.2d 910, 915-916.  As in *First Western*, "[a]ssuming these facts can be proved, [Caswell] . . . may be held liable . . . under the *alter ego* principle." (*Id*. at p. 916.)

Defendants argue that Rutherford failed to allege specific facts to support an alter ego theory, but Rutherford was required to allege only "ultimate rather than evidentiary facts."  (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 550.)  Moreover, the "less particularity [of pleading] is required where the defendant may be assumed to possess knowledge of the facts at least equal, if not superior, to that possessed by the plaintiff," which certainly is the case here.  (*Burks v. Poppy Construction Co*. (1962) 57 Cal.2d 463, 474.)  Therefore, we affirm the trial court's ruling that Rutherford sufficiently pled an alter ego theory of liability.

## III.   DISPOSITION

The judgment of dismissal is reversed and the cause is remanded to the superior court with directions to vacate its order sustaining defendants' demurrers to the second amended complaint without leave to amend and to enter a new order (1) sustaining the demurrers as to the second cause of action for promissory fraud, without leave to amend; (2) overruling the demurrers as to the third cause of action for money had and received and the fourth cause of action for unjust enrichment/restitution; and (3) sustaining the demurrers as to the first cause of action for breach of contract and granting Rutherford leave to file a third amended complaint with respect to that cause of action only.  The parties shall bear their own costs on appeal.

_____
                                        Premo, J.

WE CONCUR:

_____
        Rushing, P.J.

_____
        Márquez, J.

15

| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-10-CV175989 |
|---|---|
| Trial Judge: | Hon. Patricia M. Lucas |
| Counsel for Plaintiff/Appellant:<br>Rutherford Holdings, LLC | Hamrick & Evans<br>James M. Pazos<br>George Knopfler |
| Counsel for Defendants/Respondents:<br>Plaza Del Rey, Shereen Caswell | Stein & Lubin<br>Jonathan E. Sommer<br>Frank R. Petrilli |

Rutherford Holdings, LLC v. Plaza Del Rey et al.
H038303