Filed 11/25/25  K-Swiss International v. Carter Internacional CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| K-SWISS INTERNATIONAL LTD. et al., | B325871 |
| Plaintiffs, Cross-Defendants, and Respondents, | (Los Angeles County Super. Ct. No. BC708915) |
| v. | |
| CARTER INTERNACIONAL, S.A., | |
| Defendant, Cross-Complainant, and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Holly J. Fujie, Judge.  Affirmed.

Vivoli Saccuzzo and Michael W. Vivoli for Defendant, Cross-Complainant, and Appellant.

Sheppard, Mullin, Richter & Hampton, Paul S. Malingagio and Juthamas J. Suwatanapongched for Plaintiffs, Cross-Defendants, and Respondents.

————————————————

## INTRODUCTION

Defendant and cross-complainant Carter Internacional, S.A. appeals from the trial court's judgment entered in favor of plaintiffs and cross-defendants K-Swiss International Ltd. and K-Swiss, Inc. (collectively, K-Swiss). On appeal, Carter challenges the trial court's order sustaining without leave to amend K-Swiss's demurrer to Carter's cross-claims for breach of the implied covenant of good faith and fair dealing, breach of the implied warranties of merchantability and fitness, and fraud. Carter also challenges the trial court's order granting summary judgment in K-Swiss's favor on Carter's remaining cross-claims. Because Carter has not shown any of the challenged rulings were erroneous, we affirm.

## BACKGROUND

### 1. The parties' agreements

K-Swiss manufactures clothing and footwear under the K-Swiss and Palladium brands. Carter is a distributor who manages retail stores across the globe, including in the Caribbean, Central America, South America, Mexico, and Israel.

Around early 2012, Carter's president, David Assis, met Larry Remington, who was then the president of K-Swiss's Palladium brand. Assis proposed creating a partnership between Carter and K-Swiss, through which Carter would market and sell K-Swiss products throughout Central America, South America, and the Caribbean.

In May 2012, Carter and K-Swiss executed their first distribution agreement, which granted Carter the rights to distribute and sell the Palladium brand in several countries throughout Central and South America and the Caribbean. The parties later amended the May 2012 agreement several

times to, among other things, give Carter exclusive distribution rights in additional countries in the same regions as well as in Mexico.

In 2015, Carter and K-Swiss executed two more distribution agreements. The first agreement granted Carter the rights to distribute and sell the K-Swiss brand in various countries in South and Central America and the Caribbean, and the second agreement granted Carter the rights to distribute and sell the K-Swiss brand in Israel.

The essential terms of each of the parties' distribution agreements were the same. The agreements required Carter to "exercise its best efforts to promote vigorously and expand the sale of" K-Swiss and Palladium products. The agreements required Carter to purchase from K-Swiss a minimum number of products during predetermined performance periods, which were usually one year long, with the minimum number of purchases increasing each year. The agreements also required Carter to open new "Concept Shops" during each performance period.

Carter agreed to train and maintain an "adequate sales force" at its own expense, and to "participate in and cooperate with" K-Swiss in any promotional plans established by K-Swiss. The agreements required Carter to position any K-Swiss or Palladium product it sold as a "premium product at the highest position compared to footwear brands that compete with" K-Swiss or Palladium branded products. Carter agreed to spend at least 5 percent of its wholesale sales to advertise and promote K-Swiss and Palladium branded products.

Paragraph 7 of the May 2015 agreement, titled "Defective Products," stated: "In consideration of possible defects in the Products, [K-Swiss] will twice each year rebate to [Carter] an

3

amount equal to 0.025% of all purchases of the Products by [Carter]. These rebates fully and finally compensate [Carter] for all defective Product claims. The rebates may be subject to review from time to time and on a case to case basis, but the reviews may not result in any change in this formula without a written agreement signed on behalf of both parties." Each of the parties' other distribution agreements also contained a paragraph 7, entitled "Defective Products," that included nearly identical language.

Each agreement also included a provision addressing integration, modification, and waiver of the agreement's terms. The first section of that provision, an integration clause, stated that the agreement "contains the sole and entire understanding of the parties related to its subject matter and supersedes all prior or contemporaneous oral or written agreements concerning the subject matter." The second section of the provision addressed the parties' rights to modify the agreement, stating that the agreement "cannot be changed orally and no modification . . . may be recognized nor have any effect, unless the writing in which it is set forth is signed by" Carter and an executive officer of K-Swiss. That section also stated that no "waiver of any of the provisions of or rights under this Agreement [will] be effective unless in writing and signed by the party to be charged herewith . . . ." Finally, the third section of the provision specified that "[t]he failure of either party to enforce, at any time, or for any period of time, the provisions" of the agreement "or the failure of either party to exercise any option" under the agreement "may not be construed as a waiver of" that provision, option or remedy "and may in no way affect that party's right to

enforce" those provisions or exercise that option or provision or obtain that remedy.

## 2.    The parties' litigation

In June 2018, K-Swiss sued Carter.  In its operative second amended complaint, K-Swiss asserted four causes of action for breach of contract, one cause of action for account stated, and one cause of action for open book account.  K-Swiss alleged that Carter breached several of the parties' distribution agreements by failing to pay for products that it purchased from K-Swiss.

In July 2019, Carter filed a cross-complaint against K-Swiss.  Carter later filed a first amended cross-complaint, asserting the following causes of action:  (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of the implied warranty of merchantability; (4) breach of the implied warranty of fitness; (5) fraud; (6) unfair competition; (7) negligent interference with contractual relations; and (8) negligent interference with prospective business advantage.

In its first amended cross-complaint, Carter alleged, among other things, that K-Swiss mismanaged its business, permitted counterfeit K-Swiss and Palladium products to be sold throughout South and Central America, and delivered to Carter large quantities of damaged or defective products, causing Carter's sales to rapidly decline in several of its markets.  As a result, Carter had to close several retail stores and lost significant amounts of money that it spent promoting and building out the K-Swiss and Palladium brands.  Carter sought nearly $25 million in damages from K-Swiss.

## 2.1. K-Swiss's demurrers

In December 2019, the trial court sustained K-Swiss's demurrer with leave to amend as to Carter's cross-claims for breach of the implied covenant of good faith and fair dealing, breach of the implied warranty of merchantability, breach of the implied warranty of fitness, fraud, and negligent interference with contractual relations.

In January 2020, Carter filed a second amended cross-complaint. Carter asserted the same cross-claims against K-Swiss, except it restyled its cause of action for negligent interference with contractual relations as a cause of action for intentional interference with contractual relations.

In February 2020, K-Swiss demurred to Carter's second amended cross-complaint. K-Swiss argued that Carter failed to state a cause of action for breach of the implied covenant of good faith and fair dealing because Carter sought to impose duties upon K-Swiss that exceeded the scope of the terms of the parties' distribution agreements. K-Swiss also argued that Carter impermissibly relied on many of the same allegations supporting its cause of action for breach of contract to support its cause of action for breach of the implied covenant of good faith and fair dealing.

As to Carter's cross-claims for breach of the implied warranties, K-Swiss argued those claims failed because they were inconsistent with Paragraph 7 of the distribution agreements, which expressly limited K-Swiss's liability for any defective products it delivered to Carter.

K-Swiss argued that Carter failed to state a cause of action for fraud for several reasons. Among other things, K-Swiss argued that Carter failed to plead its claim with sufficient

6

particularity because Carter failed to allege that any of K-Swiss's representatives who made false promises did so with the intent to deceive or with knowledge that the promises would not be performed. Finally, K-Swiss argued that Carter's cross-claim for fraud was an improper attempt to convert its breach of contract cause of action into a tort claim.

The trial court sustained K-Swiss's demurrer to Carter's second amended cross-complaint. As to Carter's cross-claim for breach of the implied covenant of good faith and fair dealing, the court sustained the demurrer without leave to amend, finding that nothing in the parties' distribution agreements prohibited, or indicated an intent to prohibit, K-Swiss from mismanaging its own business, allowing the distribution of counterfeit goods in Carter's sales territories, delivering large quantities of defective goods, or refusing to rectify mounting damages sustained by Carter. The court also found that Carter conceded its cross-claim for breach of the implied covenant of good faith and fair dealing was duplicative of its cross-claim for breach of contract by failing to respond to K-Swiss's argument on that point.

The trial court sustained without leave to amend the demurrer as to Carter's cross-claims for breach of the implied warranties, concluding that the parties expressly disclaimed any warranties concerning the quality of products delivered by K-Swiss when they included Paragraph 7 in each of the distribution agreements, which expressly limited K-Swiss's liability for any defective products it delivered to Carter.

The trial court also sustained without leave to amend K-Swiss's demurrer as to Carter's cross-claim for fraud, finding Carter conceded the claim lacked merit by failing to "rebut or even address [K-Swiss's] argument that the [claim] is an

improper attempt to convert obligations from a contract into a fraud claim."

Finally, the court sustained with leave to amend K-Swiss's demurrer as to Carter's cross-claim for intentional interference with contractual relations.

In July 2020, Carter filed a third amended cross-complaint, which reasserted each of the causes of action that the trial court dismissed when it sustained K-Swiss's second demurrer. K-Swiss demurred to the third amended cross-complaint, arguing Carter failed to state a cause of action for intentional interference with contractual relations. K-Swiss also asked the court to remove from the pleading the causes of action that it already dismissed.

In September 2020, the court overruled K-Swiss's demurrer to Carter's cross-claim for intentional interference with contractual relations, and it struck Carter's cross-claims for breach of the implied covenant of good faith and fair dealing, breach of the implied warranties, and fraud.

## 2.2. K-Swiss's summary judgment motion

In April 2021, K-Swiss moved for summary judgment or, in the alternative, summary adjudication of the remaining causes of action asserted in Carter's third amended cross-complaint and all the claims asserted in K-Swiss's second amended complaint.

Carter opposed K-Swiss's motion. As part of its opposition, Carter asked the trial court to reverse its orders sustaining K-Swiss's demurrers. Carter argued that the evidence it presented in opposition to K-Swiss's summary judgment motion showed that Carter adequately pled its causes of action for breach of the implied covenant of good faith and fair dealing, breach of the implied warranties, and fraud.

8

As to its cause of action for breach of contract, Carter argued that summary judgment was not appropriate because it presented evidence that K-Swiss breached the parties' distribution agreements by delivering large quantities of defective goods and by failing to prevent the sale of counterfeit K-Swiss and Palladium products in the territories where Carter had exclusive distribution rights. Carter asserted that Paragraph 7 of the parties' distribution agreements did not authorize K-Swiss to deliver large quantities of defective goods because that provision was an unenforceable liquidated damages clause.

To the extent Paragraph 7 was valid, Carter argued, it presented evidence that K-Swiss waived application of that provision and should be estopped from enforcing it. Specifically, Carter pointed to evidence that K-Swiss did not enforce Paragraph 7 throughout the parties' relationship under the distribution agreements. According to Carter, K-Swiss's representatives assured Carter prior to the execution of the distribution agreements that K-Swiss would not enforce Paragraph 7, and K-Swiss did in fact replace, at no charge to Carter, some of the defective products that it delivered under those agreements.

In July 2021, the trial court granted in part and denied in part K-Swiss's summary judgment motion. The court denied the motion as to K-Swiss's request for summary judgment of the claims asserted in its second amended complaint, explaining that K-Swiss failed to present any evidence or individualized argument showing there were no triable issues of material fact as to any of the claims asserted in its operative pleading.

9

The court granted summary judgment in K-Swiss's favor as to all the remaining causes of action asserted in Carter's third amended cross-complaint. As to Carter's claim for breach of contract, the court found there were no triable issues of material fact. The court concluded that K-Swiss's delivery of defective goods and failure to prevent counterfeit K-Swiss and Palladium goods from being sold within the territories where Carter had exclusive distribution rights could not constitute breaches of the parties' distribution agreements because none of those agreements prohibited such conduct. Indeed, the court explained, Paragraph 7 of the parties' agreements "account[s] for the production of [defective] goods by providing [Carter] a rebate in the event defective goods are delivered."

The court rejected Carter's argument that a triable issue existed as to whether K-Swiss waived, or was estopped from enforcing, Paragraph 7 of the parties' distribution agreements. The court found that Carter's evidence that K-Swiss replaced defective goods on one occasion was insufficient to support an inference that K-Swiss waived application of Paragraph 7. In any event, the court explained, the parties' agreements expressly prohibited any nonwritten waivers of the agreements' terms, and Carter failed to present any evidence showing K-Swiss agreed in writing to waive enforcement of Paragraph 7 or any of the agreements' other terms.

### 2.3. The judgment

In December 2022, under a stipulation between the parties, the trial court entered judgment for $417,000 in K-Swiss's favor as to all the claims asserted in its second amended complaint.

10

The court also entered judgment in K-Swiss's favor as to all of Carter's cross-claims.

Carter appeals.

## DISCUSSION

### 1.    Demurrer

Carter first challenges the trial court's order sustaining without leave to amend K-Swiss's demurrers to Carter's cross-claims for breach of the implied covenant of good faith and fair dealing, breach of the implied warranties of merchantability and fitness, and fraud.  As we explain, Carter has not shown the court erred in dismissing any of these cross-claims.

#### 1.1.   Standard of review

We independently review a trial court's order sustaining a demurrer to determine whether the operative complaint alleges facts sufficient to state a cause of action.  (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 725.)  We assume the truth of all properly pled factual allegations and matters that are judicially noticeable and liberally construe the complaint's allegations with a view toward substantial justice.  (*Ibid.*; *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 43, fn. 7.)  However, if facts appearing in attached exhibits or judicially noticed documents contradict, or are inconsistent with, the complaint's allegations, we rely on the facts in the exhibits and judicially noticed documents.  (*Ivanoff*, at p. 726.)

If the trial court sustained the demurrer without leave to amend, we must decide whether there is a reasonable possibility that the plaintiff can amend his complaint to cure the defect. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)  If the defect can be cured, the trial court has abused its discretion, and we reverse.  (*Ibid.*)  If the defect cannot be cured, the trial court has

11

not abused its discretion, and we affirm. (*Ibid*.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid*.) Such a showing can be made for the first time on appeal. (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711.)

### 1.2. Implied covenant of good faith and fair dealing

Carter first contends the trial court erred when it sustained without leave to amend K-Swiss's demurrer to Carter's cross-claim for breach of the implied covenant of good faith and fair dealing. Although Carter alleged in the operative second amended cross-complaint that K-Swiss breached the implied covenant by mismanaging its own business, allowing the wide distribution of counterfeit goods, delivering large quantities of defective products, and not rectifying Carter's mounting damages, Carter focuses only on its allegation that K-Swiss delivered defective products in challenging the court's ruling in its opening brief. We therefore limit our analysis to whether the court correctly found allegations that K-Swiss delivered large quantities of defective products did not support a claim for breach of the implied covenant of good faith and fair dealing.

Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement. (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 371 (*Carma*).) The covenant is implied to ensure that " 'neither party will do anything which will injure the right of the other to receive the benefits of the agreement.' " (*Kransco v. American Empire Surplus Lines Ins. Co.* (2000) 23 Cal.4th 390, 400.)

The "implied covenant of good faith is read into contracts 'in order to protect the express covenants or promises of the

12

contract, not to protect some general public policy interest not directly tied to the contract's purpose.' " (*Carma, supra*, 2 Cal.4th at p. 373.)  The scope of conduct prohibited by the implied covenant is, therefore, limited by the purposes and express terms of the contract.  (*Ibid*.)

Except in limited circumstances, the implied covenant cannot impose substantive terms and conditions beyond those incorporated in the specific terms of the parties' agreement. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 349–350.) Nor can the implied covenant vary the express terms of the parties' agreement or restrict conduct expressly permitted by the agreement, even if such conduct would typically be prohibited by an implied covenant of good faith and fair dealing.  (*Carma, supra*, 2 Cal.4th at p. 374.)

The following conditions generally must be met before a court will enforce the implied covenant to restrict or compel a party's performance under a contract:  " ' "(1) the implication must arise from the language used or it must be indispensable to effectuate the intention of the parties; (2) it must appear from the language used that [the implied covenant] was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) [the] implied covenant[] [is] justified on the grounds of legal necessity; (4) . . . it can be rightfully assumed that [the implied covenant] would have been made if attention had been called to it; and (5) . . . the subject [of the implied covenant] is [not] completely covered by the contract." ' " (*Third Story Music, Inc. v. Waits* (1995) 41 Cal.App.4th 798, 804 (*Third Story Music*).)

Here, the conduct that Carter alleges constitutes a breach of the implied covenant of good faith and fair dealing—the

13

delivery of defective products—is expressly addressed in the parties' distribution agreements.  That is, Paragraph 7 of each agreement, titled "Defective Products," outlines what remedies are available to Carter should K-Swiss deliver defective products. That provision provides, in relevant part, that "[i]n consideration of possible defects" in K-Swiss's products, K-Swiss "will twice each year rebate" to Carter 0.025 percent of all its purchases. That provision also states that the twice-yearly rebates "fully and finally compensate [Carter] for all defective Product claims." Simply put, the subject of the implied covenant that Carter seeks to impose on the parties' agreements is covered by the terms of the agreements.  The trial court, therefore, correctly found Carter failed to state a claim for breach of the implied covenant of good faith and fair dealing.  (See *Third Story Music*, *supra*, 41 Cal.App.4th at p. 804 [to enforce the implied covenant, its subject must not be completely covered by the terms of the agreement].)

Carter argues that strictly enforcing the terms of Paragraph 7, especially where K-Swiss has delivered "massive quantities" of defective products, would deprive Carter of its implicit right under the agreement to "receive high-quality goods to market and sell."  Carter misunderstands the nature of the implied covenant of good faith and fair dealing.

As the appellate court in *Third Story Music* explained, courts are not at liberty to impose an implied covenant of good faith and fair dealing that would vary the express terms of the parties' agreement unless doing so is necessary to save the contract from being illusory.  (*Third Story Music*, *supra*, 41 Cal.App.4th at p. 808.)  As we explain, strictly enforcing

14

Paragraph 7 of the parties' distribution agreements does not render those agreements illusory.

Paragraph 7 of each distribution agreement acknowledges that K-Swiss may deliver defective goods to Carter. That provision places no limitation on the number of defective goods K-Swiss may deliver before doing so constitutes a breach of the agreements. Rather, the provision states that to "fully and finally" compensate Carter for "*all* defective Product claims," Carter is entitled to twice-yearly rebates at a predetermined rate tied to the number of Carter's total purchases. (Italics added.) Carter, therefore, received consideration for allowing K-Swiss to deliver defective products. Consequently, enforcing Paragraph 7 of the parties' agreements does not render those agreements illusory. (See *Third Story Music*, *supra*, 41 Cal.App.4th at pp. 808–809 [where party bargained for expansive rights and paid legally adequate consideration for those rights, that party's exercise of those rights to the other party's detriment did not breach the implied covenant of good faith and fair dealing].)

Carter's claim for breach of the implied covenant of good faith and fair dealing essentially seeks to rewrite an express term of the distribution agreements with which Carter is now dissatisfied. But the implied covenant does not allow courts to " 'make better agreements for parties than they themselves have been satisfied to enter into or [to] rewrite contracts because they operate harshly or inequitably.' " (*Third Story Music*, *supra*, 41 Cal.App.4th at p. 809.)

As the allegations in its pleadings make clear, Carter is a sophisticated distributor of footwear products who operates numerous retail stores across the globe. In its negotiations with K-Swiss, Carter could have rejected Paragraph 7 or bargained for

15

a more favorable remedy for K-Swiss's delivery of defective goods before entering into the underlying distribution agreements.

### 1.3. Implied warranties

Carter next contends the trial court erred when it dismissed its cross-claims for breach of the implied warranty of merchantability and breach of the implied warranty of fitness on the grounds that K-Swiss expressly disclaimed or limited its liability for defective products by including Paragraph 7 in the parties' distribution agreements. As we explain, this argument lacks merit.

Generally, "words of disclaimer or modification give way to words of warranty unless some clear agreement between the parties dictates the contrary relationship." (*Hauter v. Zogarts* (1975) 14 Cal.3d 104, 119.) An implied warranty may be modified or disclaimed if the "seller *clearly* limits [its] liability." (*Ibid.*) A party may limit implied warranties through "*words* that clearly communicate that a particular risk falls on the buyer." (*Ibid.*, fn. omitted.)

As we discussed above, Paragraph 7 of the parties' distribution agreements limits K-Swiss's liability for delivering defective products. That provision expressly acknowledges that K-Swiss may deliver defective goods, and it establishes a predetermined rebate that K-Swiss must pay to Carter as consideration for "*all* defective Product claims." (Italics added.)

Relying on *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221 (*Rutherford*), Carter argues that the trial court was required to accept as true Carter's allegations in the second amended cross-complaint that Paragraph 7 "served as no more than K-Swiss's representation 'to Carter that it could

16

reasonably expect that no more that 0.025% of the product delivered to Carter would be defective.' "

In *Rutherford*, the court held that " ' "[w]here an ambiguous contract is the basis of an action, it is proper, if not essential, for a plaintiff to allege its own construction of the agreement. So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement." ' " (*Rutherford, supra*, 223 Cal.App.4th at p. 229.) The court went on to find that the underlying contract was ambiguous and reasonably susceptible to the meaning that the appellant ascribed to it on appeal. (*Ibid.*)

Carter's reliance on *Rutherford* is misplaced. Carter does not explain how Paragraph 7 is ambiguous or susceptible to more than one reasonable interpretation. As we explained above, the provision is unambiguous.

In short, Carter has not shown the trial court erred when it sustained without leave to amend K-Swiss's demurrer to Carter's cross-claims for breach of the implied warranty of merchantability and breach of the implied warranty of fitness.

### 1.4. Fraud

Carter next contends the court erred when it dismissed its cross-claim for fraud. According to Carter, the court erroneously found that it improperly attempted to convert its breach of contract claim into one for fraud. We need not decide whether the court properly sustained the demurrer on this ground because we conclude Carter failed to plead each element of its cause of action for fraud with sufficient specificity. Because K-Swiss demurred on this ground, which would have been a proper

17

independent basis for the trial court to sustain the demurrer, Carter has not shown the court erred when it dismissed its cross-claim for fraud. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 982 [even if the trial court's legal reasoning was erroneous, the reviewing court will not reverse that ruling if it is supported by a valid legal theory].)

In its second amended cross-complaint, Carter alleged that K-Swiss knowingly made several false promises to refund or replace large quantities of defective goods that it delivered to Carter and to reimburse Carter for the costs of hiring a celebrity to promote K-Swiss's products. In other words, Carter asserted K-Swiss is liable for promissory fraud. (See *Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1453 [promissory fraud is a subspecies of fraud and deceit, based on a promise that is made without any intention to perform it].)

To prevail on a claim for promissory fraud, a plaintiff must prove: (1) before the parties entered the underlying transaction, the defendant made a promise regarding a material fact; (2) at the time the defendant made the promise, it did not intend to perform on it; (3) the defendant intended to deceive or induce the plaintiff to enter into the transaction; (4) the plaintiff reasonably relied on the defendant's promise to enter the transaction; (5) the defendant did not perform on the promise; and (6) the defendant's conduct damaged the plaintiff. (*Gruber v. Gruber* (2020) 48 Cal.App.5th 529, 540 (*Gruber*).) The absence of any one of these elements will preclude recovery. (*Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331 (*Wilhelm*).)

To survive a demurrer, the plaintiff must plead every element of the alleged fraud "in full, factually and specifically." (*Wilhelm, supra,* 186 Cal.App.3d at p. 1331.) The "general

18

pleading of the legal conclusion of fraud is insufficient." (*Ibid*.) This means the plaintiff must plead " ' "*facts* which 'show how, when, where, to whom, and by what means the [false] representations were tendered.' " ' " (*Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 993 (*Robinson*).) Where, as here, fraud is asserted against a corporation, the plaintiff must allege "the name of the person who allegedly made the fraudulent representation, his or her authority to speak, to whom he or she spoke, what was said and when it was said." (*Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8 Cal.App.5th 23, 35 (*Kalnoki*).)

In its second amended cross-complaint, Carter alleged that the following representatives from K-Swiss promised to replace or refund defective products that were shipped to Carter: (1) Neal Dellacono, K-Swiss's general sales manager and main point of contact for Carter between 2012 and 2016; (2) Barney Walters, K-Swiss's former head of marketing and eventual president; and (3) Jamel Khadir, one of K-Swiss's sales representatives assigned to Carter around 2017. Carter also alleged that Timothy Nickloff, one of K-Swiss's sales representatives who worked with Carter in 2016, promised Carter that K-Swiss would reimburse Carter for the costs of hiring a celebrity to promote the Palladium brand.

Although Carter alleged who made each of the underlying promises, when the promises were made, and through which means the promises were made, Carter does not allege to whom within Carter's company any of the alleged promises were made. Instead, Carter generally alleges that these promises were made to "Carter"—i.e., the company itself. These allegations do not meet the specificity requirements for pleading fraud against a

19

corporation. Rather, a claim for fraud against a corporation must allege "to whom" the allegedly false representations were made. (*Kalnoki*, *supra*, 8 Cal.App.5th at p. 35.)

More importantly, Carter does not allege that any of the representatives named above did not intend to perform any of the promises that they made or that they made those promises with the intent to deceive or induce Carter to continue purchasing products from K-Swiss. Nor does Carter allege that any other representatives from K-Swiss with the authority to carry out the alleged promises knew that such promises were made but did not intend for K-Swiss to ever fulfill, or otherwise act on, the promises. Instead, Carter alleges only in a general and conclusory manner that "Cross-Defendants' representations were false and Cross-Defendants knew all of their representations were false when they made them . . . ." These allegations do not meet the specificity requirements for pleading a promissory fraud claim, as they do not allege a factual basis to support the second and third elements of that cause of action. (See *Gruber*, *supra*, 48 Cal.App.5th at p. 540; see also *Wilhelm*, *supra*, 186 Cal.App.3d at p. 1331 [affirming dismissal of fraud claim because plaintiff did not allege with specificity a factual basis for how the defendant knew her representations were false].)

In short, we conclude the trial court properly sustained K-Swiss's demurer to Carter's cross-claim for fraud because Carter has not alleged that claim with sufficient specificity. Because Carter does not explain on appeal how it could amend its pleadings to cure the defects outlined above, the trial court did not abuse its discretion in denying Carter leave to amend this cause of action. (*Blank*, *supra*, 39 Cal.3d at p. 318.)

20

## 2.	Summary judgment

Carter next challenges the trial court's order granting summary judgment in K-Swiss's favor on Carter's cross-claim for breach of contract.  Relevant here, the court found, among other things, that Carter failed to demonstrate a triable issue exists as to whether K-Swiss waived, or should be estopped from enforcing, Paragraph 7 of the parties' distribution agreements—i.e., the defective products provision—as a defense to that claim.  This finding is the only aspect of the court's summary judgment ruling that Carter challenges on appeal.  As we explain, Carter has not shown the court erred in granting summary judgment.

### 2.1.	Standard of review

We independently review an order granting or denying summary judgment or summary adjudication.  (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 (*Wiener*).)  We determine whether the moving party has established facts that negate the opposing party's claims and justify entering judgment in the moving party's favor.  (*Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 229.)  If the moving party meets this burden, the opposing party must demonstrate the existence of a triable issue of material fact.  (*Ibid.*)  A triable issue exists if the evidence would allow a reasonable trier of fact to find in favor of the party opposing summary judgment.  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

We liberally construe the evidence in favor of the opposing party and resolve all doubts about the evidence in that party's favor.  (*Wiener, supra*, 32 Cal.4th at p. 1142.)  We consider all evidence the parties submit in connection with the motion, except that which the court properly excluded.  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)

If we find there is no issue of material fact, we must affirm the summary judgment if it is correct on any legal theory applicable to this case, even if that theory was not adopted by the trial court. (*Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 493 (*Torres*).) Thus, we must affirm if any of the grounds urged by the respondent, either on appeal or in the trial court, entitles it to summary judgment. (*Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1481.)

### 2.2. Waiver

Carter first argues the trial court erred in finding that no triable issues exist as to whether K-Swiss waived application of Paragraph 7 as a defense to Carter's breach of contract cross-claim. Specifically, Carter contends the court erred when it relied on a provision appearing in each of the underlying agreements that required any modifications to be in writing and signed by the parties. As we explain, this argument lacks merit.

Contrary to what Carter claims on appeal, the trial court did not rely on the provisions in the parties' agreements requiring modifications to be in writing. Indeed, it is well-settled that even where a contract contains a provision precluding oral modifications, a party to the contract can still show that the other party waived, or should be estopped from enforcing, one of the contract's provisions based on the other party's conduct or statements. (See *Wind Dancer Production Group v. Walt Disney Pictures* (2017) 10 Cal.App.5th 56, 78 (*Wind Dancer*) ["notwithstanding a provision in a written agreement that precludes oral modification, the parties may, by their words or conduct, waive contractual rights"]; see also Civ. Code, § 1698, subd. (d) [" '[n]othing in this section precludes in an appropriate

22

case the application of rules of law concerning estoppel, . . . [or] waiver of a provision of a written contract' "].)

The parties' agreements in this case did not contain only provisions requiring modifications to be in writing. They also included antiwaiver provisions. Indeed, it was the antiwaiver provisions, and not the provisions requiring modifications to be in writing, that the trial court relied on to find Carter failed to raise a triable issue as to waiver. The court relied on the following language from the parties' agreements: "The failure of either party to enforce, at any time, or for any period of time, the provisions [of the agreements] or the failure of either party to exercise any option [under the agreements] may not be construed as a waiver of" that provision. The court also relied on language in the parties' agreements that precluded waiver of the agreements' provisions unless the waiver was "in writing and signed by the party to be charged with the waiver."

Carter does not argue that the antiwaiver provisions are unenforceable. Nor does Carter argue that K-Swiss somehow waived enforcement of those provisions. In fact, Carter does not address in any detail the language of the antiwaiver provisions in its argument challenging the court's summary judgment ruling. Carter has, therefore, forfeited any challenge to the trial court's reliance on the antiwaiver provisions of the parties' agreements to find no triable issues exist as to whether K-Swiss waived its right to enforce Paragraph 7. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*) [if an appellant fails to raise a point, or asserts it but does not support it with reasoned argument and citations to authority, we may treat that point as waived].)

23

In any event, courts have enforced contractual antiwaiver provisions. (See, e.g., *Torres*, *supra*, 57 Cal.App.5th at p. 505 [concluding that the contract's antiwaiver provision "prohibits waiver by conduct"].) Assuming the antiwaiver provisions at issue here are enforceable, they required K-Swiss to make any waiver in a writing that is signed by one of the company's executive officers. Although Carter presented evidence that its former president and CEO believed K-Swiss would not have enforced Paragraph 7 of the parties' agreements while he oversaw the company, Carter presented no evidence of a written and signed waiver from a K-Swiss executive officer. Consequently, Carter failed to present evidence that would support a finding that K-Swiss waived enforcement of that provision.

### 2.3. Estoppel

Carter next contends that it met its burden to show a triable issue exists as to whether K-Swiss should be estopped from enforcing Paragraph 7 of the parties' distribution agreements. This argument also lacks merit.

Aside from waiving contractual rights, parties may, because of their words or conduct, be estopped from enforcing a written provision in a contract. (*Wind Dancer*, *supra*, 10 Cal.App.5th at pp. 78–79.) The party to be estopped does not need to have acted in bad faith or intended to mislead the other party. (*Id*. at p. 79.) It is sufficient that the conduct of the party to be estopped in fact induced the other party to engage, or refrain from engaging, in certain conduct. (*Ibid*.) More specifically, estoppel requires proof that the party to be estopped knew the facts and intended that its conduct would be relied upon, and that the other party was ignorant of the true state of

24

facts and reasonably relied on the conduct of the party to be estopped. (*Alameda County Deputy Sheriff's Assn. v. Alameda County Employees' Retirement Assn.* (2020) 9 Cal.5th 1032, 1072.) Whether an estoppel exists is a question of fact. (*Wind Dancer*, at p. 79.)

Here, Carter claims that K-Swiss assured Carter that it would replace any defective products that it shipped, and guard against the future shipment of defective products, all at its own cost. Carter does not, however, cite to anything in the record to support those assertions. Carter also does not cite or otherwise identify any evidence in the record that would support a showing that it in fact relied on any of K-Swiss's conduct or statements.

" ' "As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed." ' " (*Torres*, *supra*, 57 Cal.App.5th at p. 492.) Because Carter does not cite anything in the record to support its argument that a triable issue exists as to whether K-Swiss should be estopped from enforcing Paragraph 7 as a defense to Carter's breach of contract claim, it has forfeited its challenge to the trial court's finding on that issue. (See *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656 [an appellant forfeits any argument not supported by "appropriate citations to the material facts in the record"].)

In short, Carter has not met its burden to show the trial court erred when it granted summary judgment in K-Swiss's favor on the cross-claims asserted by Carter.

### 3. The judgment on K-Swiss's second amended complaint

Finally, Carter argues that we must reverse the judgment in K-Swiss's favor on the claims asserted in K-Swiss's second amended complaint. According to Carter, the court "applied the same erroneous legal rulings [challenged above] in support of K-Swiss's own affirmative complaint as it did in dismissing Carter's meritorious cross-claims." This argument lacks merit.

As a threshold matter, the judgment in this case states that it was entered "[b]ased on the agreement and joint stipulation" of the parties. Carter points to nothing in the record showing that the court made any dispositive, let alone adverse, rulings concerning the claims asserted in K-Swiss's second amended complaint before the judgment was entered. All the record shows is that Carter agreed to have the court enter judgment in K-Swiss's favor on K-Swiss's claims. Having agreed to that aspect of the judgment, Carter has not shown, or even tried to explain, why it can now challenge it on appeal. (See *Simple Avo Paradise Ranch, LLC v. Southern California Edison Co.* (2024) 102 Cal.App.5th 281, 292 ["A stipulated judgment is not generally appealable"].)

Finally, even assuming Carter preserved its right to challenge the judgment as it relates to the claims asserted by K-Swiss, Carter has not meaningfully developed any argument on that point. "It is a fundamental rule of appellate review that the judgment appealed from is presumed correct and ' " 'all intendments and presumptions are indulged in favor of its correctness.' " [Citation.]' " (*Benach*, *supra*, 149 Cal.App.4th at p. 852.) To overcome this presumption, the "appellant must provide an argument and legal authority to support his

26

contentions.  This burden requires more than a mere assertion that the judgment is wrong.  'Issues do not have a life of their own:  If they are not raised or supported by argument or citation to authority, [they are] . . . waived.' " (*Ibid*.)  It is not the appellate court's role "to construct theories or arguments to undermine the judgment and defeat the presumption of correctness.  When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, [the appellate court] treat[s] the point as waived." (*Ibid*.)

Carter does not cite anything in the record to support its assertion that the trial court erred when it entered judgment in K-Swiss's favor on the claims asserted by K-Swiss.  Carter also does not discuss, on an individualized basis, any of the causes of action asserted in K-Swiss's complaint.  Nor does Carter cite any legal authority that supports its assertion that the court erred in entering judgment in K-Swiss's favor.  Carter has, therefore, waived any challenge to the judgment as it relates to the claims asserted in K-Swiss's second amended complaint.  (*Benach*, *supra*, 149 Cal.App.4th at p. 852.)

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

VIRAMONTES, J.

WE CONCUR:

STRATTON, P. J.

WILEY, J.